DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## January, 1894.

---

MARY SCOTT ROWLAND, Respondent, *v.* MARGARET A. HOWARD and Another, as Executors, etc., of MARY H. WHITE, Deceased, Appellants.

*Claims against a decedent, withheld during lifetime — nature of the proof required to establish them.*

The rule — that claims withheld during the life of the alleged debtor, and sought to be enforced when death has silenced his knowledge and explanation, are always to be carefully scrutinized and admitted only upon very satisfactory proof — applied to a claim against a decedent's estate for treatment and preparations for improving the complexion, alleged to have been furnished to the decedent under an oral agreement for a complete course of treatment, claimed to have been completed about seven months before the decedent's death.

APPEAL by the defendants, Margaret A. Howard and James Brooks, as executors of the last will and testament of Mary H. White, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 20th day of October, 1893, in accordance with the report of a referee, upon an order made at Special Term confirming the report, and also from the order of confirmance and from an order denying the defendants' motion for a new trial.

*Amasa A. Redfield,* for the appellants.

*Epstein Brothers,* for the respondent.

O'Brien, J. :

This is a statutory action upon a claim against a decedent's estate, and was commenced by the entry of an order of reference on the consent of both sides. The action was brought to recover the sum of $250 on an oral agreement for professional services for a course of treatment to the complexion and skin — foods and preparations furnished by plaintiff to the defendants' testator.

The plaintiff's case rested wholly on the testimony of her husband, who stated that he remembered calling with his wife upon Mrs. White, the decedent; that he took no part in the conversation when the agreement now sued upon was made, and that he could only give it in fragments; that decedent spoke about being treated, but objected to the price, which the plaintiff met by saying she, would make the price one-half, and a time, namely, seven o'clock in the morning, was fixed for the visits of the decedent to plaintiff's place for treatment. In answer to a leading and direct question as to whether the plaintiff stated that she would render her services for $250, the husband said, " Yes, certainly," and that it was in response to that that Mrs. White said, "All right." He further testified to seeing his wife work on Mrs. White's face a number of times, and when asked to fix the number he subsequently stated that he would say five or six times. This witness also said that the money was to be paid after the treatment was concluded, and in answer to a question as to whether he knew what the treatment consisted of, he summed up the whole subject of the agreement and what was done under it between the parties as follows :

" I know what preparations she uses and what she does. I do not know just what treatment Mrs. White received. I can't state to my own knowledge that the treatment was entirely completed. I know something was done to Mrs. White. I do not know whether the treatment was completed. Sometimes ten, sometimes twenty and sometimes thirty treatments make up a course, according to the complexion. It depends upon the work to be done and the price paid. In the majority of cases about ten or twelve treatments constitute a course. The agreement between my wife and Mrs. White was for a course of treatment. Of course, it was to be completed. It was understood to be completed before the money was paid, and the money was not to be paid until after it was completed. That was Mrs. White's agreement."

Another witness produced by plaintiff was a woman who testified that during October and November, 1891, which was the time covered by the alleged contract, she was in the employ of Mrs. White, but would not swear that she was discharged from such employment for cause. She stated that Mrs. White on one occasion said she wanted her to go and see the plaintiff and "see if you can get her to do my face for half price, and tell her that I can send her lots of customers, and see if you can arrange it for me; you know how to manage it." This witness stated that she called on the plaintiff, but did not state that she reported the result of her interview to Mrs. White, or that the latter ever mentioned to her the fact that she received treatment from plaintiff, and her sole knowledge of whether Mrs. White was treated or not was derived from the fact that she saw bottles of preparations which had labels belonging to and a picture of the plaintiff on them.

As against the testimony of the husband that the treatment all took place, according to agreement, between seven and eight o'clock in the morning, the defendants produced three witnesses, who were practically personal attendants upon Mrs. White during the period in question, who saw her every day, and who testify that Mrs. White never left her rooms during the hours when the plaintiff's husband testified he had seen her undergoing treatment by his wife at her place as agreed upon.

With respect to the hour, if material, we think there is a preponderance in favor of the conclusion that the decedent was never treated by plaintiff between the hours as fixed in the husband's testimony.

As to the dates, it is claimed that the contract sued upon was made in October, 1891, and that the course of treatment was completed in November, 1891. Mrs. White died in June, 1892, and the first information of plaintiff's claim obtained by the executors was in a letter as follows:

"NEW YORK, *Jan. 14th*, 1893.

"Mrs. M. A. HOWARD:

"I enclose herewith bill for $250 against Est. Mrs. M. H. White, but as Mrs. White missed a few of her treatments, and for the purpose of an early and amicable settlement will, if I receive check now, deduct $100 from bill; trusting this may be entirely satisfactory, I beg to remain       Very truly yours,

"MARY SCOTT ROWLAND."

No proof was offered tending to show that, during the seven months that elapsed between the time when it is claimed the contract was completed and Mrs. White's death, any bill had been rendered or any request made to her to pay ; but it does appear that Mrs. White, subsequent to the date of the supposed completion, called at the plaintiff's office and bought and paid for some rouge. And it seems remarkable that the husband, who testified that he was the plaintiff's man of business, in no way referred to the fact that she was indebted, and that nothing was said upon the subject of an obligation of Mrs. White to the plaintiff.

These circumstances to which we have adverted, create a suspicion against the good faith and validity of the claim. Such suspicions, however, should not defeat the claim if satisfactorily established, but should incline us to apply the rule, " that claims withheld during the life of an alleged debtor, and sought to be enforced when death has silenced his knowledge and explanation, are always to be carefully scrutinized and admitted only upon very satisfactory proof." (*Kearney* v. *McKeon*, 85 N. Y. 139. See, also, *Forbes* v. *Chichester*, 30 N. Y. St. Repr. 370 ; *Ulrich* v. *Ulrich*, 60 N. Y. Super. Ct. [J. & S.] 237.)

In his opinion the learned referee in this case says : " It is true there is no proof of the precise number of times the claimant treated the decedent's complexion, nor as to how many visits composed the course of treatment for the decedent." And, after adverting to the fact that the claim was sustained by the testimony solely of the husband, he continues : " Under these circumstances, the court should be guided by the probabilities of the case as they appear from the character of the evidence ; and I cannot resist the conviction, from a careful consideration of all the evidence in this case, that the agreement for a course of treatment was substantially complied with, and that the treatment was substantially completed by the beginning of November, 1891."

We think that the first error into which the learned referee fell was in relying on the probabilities, instead of, as he should, upon satisfactory proof, and the second was in assuming that the testimony showed that the course of treatment was substantially complied with.

We have quoted at length from the most significant portions of

the testimony of the husband, and it will be noticed that he stated that the agreement was that a completion of the course of treatment was a condition precedent to any payment being made by the decedent, and that he did not know whether or not the treatment was completed. This testimony, emphasized by the statement in the letter that the decedent had missed some visits, which was the reason assigned by plaintiff for offering to deduct $100 from a bill of $250, does not tend to establish the conclusion of the referee that the contract was either entirely or substantially completed.

· Upon the whole case, it can be said that no such satisfactory proof was offered in support of the claim as would have justified a conclusion favorable to the claimant. That the decedent visited the plaintiff's place and may have received some treatment appears, but that there was an agreement by which the decedent undertook to pay for a complete course the sum of $250, and that in accordance with the terms thereof the plaintiff completed such agreement by giving the course of treatment, either fully or substantially, or that the amount thus due remained unpaid and owing at the time of Mrs. White's death, is not satisfactorily established.

As against what the husband himself characterized as a fragmentary statement of the conversation between the plaintiff and the decedent, and the uncertain character of the services, if any, rendered by his wife as the result of such conversation, and what services in fact were rendered, and the times at which they were rendered, we have testimony, negative, it is true, in its character, yet throwing around the whole claim of plaintiff a cloud of suspicion and distrust, which should not permit a recovery unless more satisfactory evidence were presented of the validity of the claim. As was well said in *Forbes* v. *Chichester* (*supra*): "Public policy requires that demands against deceased parties must be strictly proved, and to relax that rule would give rise to evils far outweighing the inconvenience resulting from its strict enforcement — inconveniences which could be obviated by the exercise of ordinary care in procuring written or other evidence of contracts not dependent for validity upon the continuance of the life of either party."

Our conclusion, therefore, is that the order confirming the report of the referee, and the judgment entered thereon, should be reversed, and a new trial ordered, with costs to appellants to abide event.

6   PEOPLE ex rel. GERMAN, ETC., CO. *v.* BARKER.

First Department, January Term, 1894.          [Vol. 75.

Van Brunt, P. J. :

I concur.   There was no proof of the terms of any contract.

Parker, J., concurred.

Judgment and order reversed and a new trial ordered, with costs to the appellants to abide the event.