(76 Hun, 462; 31 Abb. N. C. 159.)

### In re WIEGEL'S ESTATE.

### In re FARIAN.

(Supreme Court, General Term, First Department.    March 16, 1894.)

1. GIFTS—EVIDENCE—PRESUMPTION.
    There is no presumption of law or fact for or against a gift in New York, but one who claims title through a gift must establish it by evidence which is "clear and convincing, strong and satisfactory."

**2. SAME—SUFFICIENCY OF EVIDENCE.**

Plaintiff claimed certain savings bank deposits as a gift from decedent. His wife testified that a few days before decedent's death he said to plaintiff, "I think I am a very sick man," and then handed to plaintiff a package containing the bank books, and said, "If I should die, all the money in bank belongs to you." Plaintiff, as administrator of decedent, verified an inventory including the bank accounts as belonging to the estate. In an action against one of the banks, plaintiff alleged that the money in bank belonged to decedent's estate, and that he was entitled to it as administrator. It also appeared that plaintiff gave an administrator's bond in an amount sufficient to cover such bank accounts. *Held,* that the evidence was not sufficient to establish plaintiff's claim. Van Brunt, P. J., dissenting.

Appeal from surrogate court, New York county.

Judicial settlement of the account of Solomon Farian, as administrator of Charles Wiegel, deceased. From a decree finally settling the account entered on the report of the referee, Frederick W. Wiegel, Anna C. B. Wiegel, and Sabrina C. M. F. Hold, heirs and next of kin of intestate, appeal. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Frederick W. Holls, for appellants.

Alfred Steckler, for respondent.

FOLLETT, J. Charles Wiegel died intestate at the city of New York on Wednesday, March 11, 1891, and April 16, 1891, respondent, claiming to be a creditor, was appointed administrator of his estate by the surrogate's court of the city and county of New York. This controversy arises over the title to $8,536.29, on deposit to the credit of the intestate at the date of his death in six savings banks. The respondent asserts that Wiegel gave him these moneys on Sunday, March 8, 1891, during his last sickness, and in apprehension of death, while the appellants, intestate's next of kin, who are resident citizens of Germany, assert that these deposits were not given to the respondent, but that the title to them is in him as administrator, and not individually. The referee appointed to determine the rights of the parties reported in favor of the respondent, and his report was sustained by the surrogate's court. The decision of this appeal depends upon whether, within legal rules, the testimony is sufficient to sustain the conclusion reached by the referee and the surrogate's court. Before entering upon a discussion of this question, it will be well to state the rule of evidence declared by the courts to be applicable to such cases. In this state the rule is that, while there is no presumption of law or fact against a gift, there is no presumption of law or fact in favor of one; and he who claims title to property through a gift must establish it by evidence which is "clear and convincing, strong and satisfactory." Devlin v. Bank, 125 N. Y. 756, 26 N. E. 744, reversing (Com. Pl. N. Y.) 9 N. Y. Supp. 530; Ridden v. Thrall, 125 N. Y. 572–576, 26 N. E. 627; Lewis v. Merritt, 113 N. Y. 386, 21 N. E. 141; Harris v. Clark, 3 N. Y. 93–121; Bedell v. Carll, 33 N. Y. 581, 585; Grymes v. Hone, 49 N. Y. 17–23; Scoville v. Post,

3 Edw. Ch. 2033; Pom. Eq. Jur. § 1146. This rule should not be relaxed in a case where the donee claims the entire estate of the donor to the exclusion of his next of kin. The intestate was a German by birth, and a tailor by trade, and, after working for a few years in Paris, France, came, in 1870, to the city of New York, where he resided until he died. In 1871 he began working at his trade for the donee, a merchant tailor, and continued in his employ until his last sickness, in March, 1891. He was never married, and, so far as is known, had no relatives in America. In the early part of his service for the donee he roomed for several years in his house, and afterwards slept for some years in his shop; but in December, 1890, he took a room at No. 421 Sixth street, a house kept by Mrs. Fix, where he remained until Sunday, March 8, 1891, when he was removed to Mt. Sinai Hospital, where he died. The foregoing circumstances are established by undisputed testimony, and afford about all the information given in respect to the decedent and his mode of life. The donee and his wife testified that on Thursday, March 5, 1891, the donor was taken ill, and, on the advice of the donee's wife, left the shop, and went to his lodgings. On Friday and Saturday Mrs. Farian visited him at his lodgings, and on Saturday found him no better, and advised him to go to the Mt. Sinai Hospital, to which he had previously expressed a desire to be taken in case of sickness. Mrs. Farian testified that about 10 a. m. Sunday, March 8th, she and her husband drove to the donor's lodgings for the purpose of taking him to the hospital. They found him in bed, and at first he seemed reluctant to go to the hospital, but soon consented, and she left the room while he dressed, with the aid of her husband. When the intestate was nearly dressed, her husband called her, and she re-entered the room just as the donor was putting on his coat, when, according to her testimony, the following occurred:

"Q. Then what happened there? A. Then he says to my husband, 'Mr. Farian, I think I am a very sick man.' He said this in German. He put his hand in his pocket. Mr. Holls: Tell what he said in English, and give the words in German afterwards. A. 'Mr. Farian, I am a very sick man, and you always have been very good to me.' Putting his hand in his pocket, he handed my husband a package, and he said, 'If I should die, all the money in bank belongs to you,' and then we opened the door, and went down stairs to the carriage. Q. And your husband had these bank books? A. My husband took the package, and put it in his pocket. Q. How were these bank books wrapped? A. Wrapped up in a newspaper, with a piece of twine around it."

Thereupon the donor and donee entered the carriage, and were driven to the hospital, at which, three days afterwards, the donor died. When Mr. Farian returned to his home, the package which the intestate had delivered to him was opened, and found to contain six savings bank books wherein the money in dispute was credited. The foregoing constitutes all of the evidence which tends to establish a gift of the deposits. On the 16th of March, 1891, Mrs. Farian made an affidavit, in which she stated—

"That she was present at 421 Sixth street, city of New York, on Sunday, March 8, 1891, when her husband and herself came to take said Wiegel to

the Mt. Sinai Hospital, and seen the said Charles Wiegel hand her husband six savings bank books, and heard said Wiegel tell her husband that he was a very sick man, and that if he should die all that was in the bank he would give to her husband, as he had no relatives living, as he knew; that deponent and her husband had taken care of him, and been good friends to him, and that he wanted him and his wife to have what little he had saved, if he should die."

On the 16th of April, 1891, the donee was appointed sole administrator of the intestate's estate, and on September 23, 1891, he verified, and thereafter filed in the surrogate's office, an inventory, in which he included the accounts in the six savings banks as belonging to the estate. Five of the banks paid their deposits to the administrator, and, under some arrangement, the amounts were deposited with the State Trust Company; but the German Savings Bank refused to pay the amount to the credit of the intestate, and April 30, 1891, Mr. Farian, as administrator of the estate of the intestate, brought an action against the bank in the supreme court to recover the amount to the credit of the decedent. It was alleged in the complaint, which was duly verified by Farian, that the money belonged to the estate of the intestate, and that he, as administrator, was entitled to recover it. We do not think the evidence by which the gift is sought to be established is "clear and convincing, strong and satisfactory." All of the testimony tending to support the gift was given by the donee's wife, and, while she had no present legal interest in establishing it, experience has shown that the interest of a loyal wife in the affairs of her husband is as intense as his own, and quite as likely to warp her judgment and accuracy when testifying in his behalf as is the legal interest of the husband to warp his judgment when testifying in his own interest. Besides the fact that the title by gift is supported only by a witness who has, in all senses except the legal one, a strong interest, there are circumstances of great probative force which render the testimony of the wife improbable, or, at least, far from satisfactory and convincing. The record shows that Farian gave an administrator's bond in the penalty of $16,000, which, presumptively, is twice the value of the estate as stated by the petitioner in his application for letters. Code Civ. Proc. § 2664. In the "true and perfect inventory of all the goods, chattels, and credits of such * * * intestate," made, verified, and filed by the administrator (Mr. Farian) pursuant to article 1, tit. 2, c. 6, pt. 2, of the Revised Statutes, (then in force,) it was stated that the sums to the credit of the intestate in the six savings banks belonged to his estate, and in the action brought by Farian as administrator against the German Savings Bank, he swore in the verified complaint that the deposit belonged to the estate. These oaths were not the unadvised acts of a person unacquainted with his legal rights, for Farian testified that, as soon as he heard of the intestate's death, and before he was buried, he consulted with Hones, an attorney and counselor of the courts of this state, who assisted in obtaining letters of administration, in making the inventory, and who began the action in the supreme court against the German Savings Bank. Aside from the deposits which are the subject of this controversy,

the estate of the intestate amounted to less than $75, and we do not think a stranger to the blood of the intestate should be allowed to succeed to the entire estate upon testimony of the character which was offered to sustain his claim.    In Harris v. Clark, supra, it was said:

"Assuming, as we must in this case, that the draft is genuine, there is no doubt of the intention of Mr. Smith to give the money in question to his sister; and I come to a conclusion against her right with reluctance,—a reluctance qualified, however, by the belief that the clear policy of the law is against the encouragement of gifts of this nature.    They are essentially testamentary.    They are to take effect only in case of the testator's death, and they are revocable during his life.    The same considerations of prudence and caution which induced the legislature to require wills of personal estate to be executed, published, and attested with great formality would seem to forbid these informal dispositions of property in expectation of death.    The temptation to fraud and imposition in regard to these gifts is as powerful and as dangerous as in the case of wills, and yet has been left unchecked and unregulated by statute; and they ought not to be tolerated by the courts, unless they are attended by all the requisites which the common law prescribes to give them validity."

This language is peculiarly applicable to this case.    The intestate was not in extremis when it is asserted that he made the gift, but he had ample opportunity to express his intention by a will, executed in accordance with the laws of this state.    We are of the opinion that the decree is not supported by the evidence, and that it should be reversed, and a new hearing had in the surrogate's court, with costs to the appellants to abide the event.

O'BRIEN, J., concurs.

VAN BRUNT, P. J.    While concurring in the result of Mr. Justice FOLLETT'S opinion, I canot concur in the reasons which he has assigned therefor.    It is undoubtedly true that, in order to support a gift such as is claimed in this proceeding, the proof should be reasonably clear and satisfactory; but the fact that the witness by whom it is sought to establish the gift may be said to be interested in the result should not preclude a finding that the gift had been established by the evidence of such a witness.    If the question as to the gift was being tried before a jury, the mere fact that the witness proving the gift was the wife of the donee would not permit the court to take the question from the jury; and if the jury, under proper instructions, believed the wife, and there was nothing which made it manifest that the story of the wife was incredible, the verdict could not be disturbed.    So, in the case at bar, the mere fact that the respondent sought to establish the gift by the testimony of his wife did not prevent a finding in his favor, notwithstanding that she may have had a large interest in his success.    Upon an examination of the evidence in this case, it seems to me that the wife is singularly supported by the affidavit which she made, and which it is claimed upon the part of the appellants is a contradiction of her testimony in this proceeding.

It is further insisted that the conduct of the respondent in placing in the inventory the subject-matter of the gift which is claimed in this proceeding, also tends to weaken the testimony which was

given in support thereof. It appears from the evidence that the respondent consulted an attorney. What advice the attorney gave we do not know, but thereafter the respondent and wife made the affidavit referred to, and the money in bank was included in the inventory, which inventory was sworn to by him. Now, the fair inference to be drawn from these facts is that the respondent was advised that the facts which are now claimed to have constituted a gift of the moneys in bank were not sufficient to transfer the title, and, this being the condition of mind of these parties, the affidavits in question were sworn to by the respondent and his wife. In her affidavit she says that she saw the deceased hand her husband six savings bank books, and heard him tell her husband that he was a very sick man, and that if he should die all that was in the bank he would give to her husband, as he had no relations living as he knew; that deponent and her husband had taken care of him, and had been good friends to him; and that he wanted him and his wife to have what little he had saved, if he should die. This affidavit was made at a time when these parties evidently believed that such a transaction was insufficient to transfer the title. The only variation from this story in the evidence she gave upon the stand perhaps is the failure to identify the books as clearly as they are in the affidavit, and the testifying to the statement of the deceased that the witness and her husband had taken care of the deceased, and been good friends to him, and that he wanted him and his wife to have what little he had saved, if he should die. This variation was entirely immaterial, because it is manifest, taking the whole statement together as contained in the affidavit, that the gift was to be to the husband; and that the statement that the deceased wanted him and his wife to have what little he had saved applied to the assumption upon the part of the deceased that the wife would enjoy what was given to her husband. It seems to me that if the wife was a credible witness her evidence could be and was sufficient to make out a complete gift causa mortis. The result of holding that such a gift cannot be predicated upon the testimony of the wife is adding a new rule to the law of evidence, viz. that to establish a fact in reference to a gift causa mortis evidence of parties entirely indifferent is necessary. But I think, however, that upon the proof as it stands there was one fact which was insufficiently established; and that is that the bank books which are now claimed by the husband were all handed over to him at the time testified to by the wife. All that she saw was a package which the husband put in his pocket, and she did not see what she supposed to be that package for hours thereafter, and it was then in her husband's possession, and he opened it, and showed to her some bank books. But there is no evidence that she ever then knew how many there were, or that they were the bank books in question; and there was ample opportunity upon the part of the husband to put into that package anything he pleased; and as a result the probative force of the testimony of the wife was fatally defective in her not being able to identify that which was handed to the husband at the time of the alleged gift, and for this reason it seems to me the gift was not established.