(15 Misc. Rep. 536.)

### SANFORD v. STORY et al.

(Greene County Court. January, 1896.)

1. ADMINISTRATOR—CONTRACT TO RELEASE MORTGAGE.
   A contract by an administrator to release, for a valuable consideration, a mortgage executed to his intestate, is binding on the estate.
2. MORTGAGE—CONVEYANCE OF PREMISES—RELEASE OF MORTGAGOR.
   In an action by an administratrix to foreclose a mortgage, in support of a defense of a release defendant and his wife testified that plaintiff's co-administrator (who became insane shortly before the action was commenced), 20 years before, orally agreed to release defendant if he conveyed the premises to his comortgagor, and that he consequently conveyed the premises. It also appeared that defendant and wife, on hearing that plaintiff was going to foreclose, told her of the agreement, and demanded a written release; that plaintiff's coadministrator, then sane, came in during the conversation; that plaintiff did not, at this meeting, deny the release, and refused a written release only because her son, who attended to her business, was away. *Held*, that an executed release, and not an executory contract to release, was shown.
3. PRINCIPAL AND SURETY—CHANGE OF RATE OF INTEREST—RELEASE OF SURETY.
   An oral agreement by a mortgagee, made before maturity of the mortgage, with the mortgagor's grantee, without consideration, to accept a less sum than the rate of interest specified in the mortgage, and the acceptance of interest at the lower rate, will not release a surety on the mortgage bond.

Appeal from Greene county court.

Action by Eliza A. Sanford against Fletcher B. Story and others to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. Reversed as to Fletcher B. Story. Affirmed as to the other defendants.

F. H. Osborn, for plaintiff.
S. Crowell, for defendants.

SANDERSON, J.    This is an action to foreclose a mortgage made by Jacob W. Story and wife and Fletcher B. Story and wife to John Hill, since deceased, bearing date April 1, 1872, on land in the town of Greenville.    The mortgage is accompanied by a bond made by Jacob W. Story and Fletcher B. Story, bearing date on the same day as the mortgage, in the penal sum of $5,000, conditioned for the payment of $2,500 in 15 years from the date thereof, with interest to be paid annually.    The complaint asks for a judgment of foreclosure and sale, and that Fletcher B. Story be adjudged to pay any deficiency which may remain after applying the proceeds of the sale of the mortgaged premises to the payment of the amount due on the said bond and mortgage, and the costs and expenses of this action, with interest thereon to the date of such payment.    Jacob W. Story died in 1892, and no relief is asked against him.    Prior to the commencement of the action the bond and mortgage were assigned to the plaintiff. The answer of Fletcher B. Story, one of the defendants herein, alleges that subsequent to the death of John Hill, in the year 1874, he made an arrangement with Truman Sanford, who was one of the administrators of the estate of John Hill, deceased, by which it was agreed that, if Fletcher B. Story would convey the mortgaged premises to his (Story's) father and mother, he (Sanford) would release him from all obligation on the bond; that, in pursuance of this agreement, said Story did convey said premises to his father and mother, who assumed the payment of the bond and mortgage in question.    The testimony of defendant Story and his wife is to the effect that Sanford agreed to accept the father and mother of Story, and to release Fletcher B. Story.    On the argument, it was admitted by counsel for the plaintiff that, if the testimony of Mrs. Story in regard to the agreement between Truman Sanford and Fletcher B. Story to release the latter from the bond were true, a good defense would have been established if the agreement had been made with the mortgagee while living, and would be a good defense in this action if an administrator can bind the estate of a deceased person by a contract of this kind. No written release was ever made or asked for.    The only evidence of what the arrangement was between Fletcher B. Story and Truman Sanford is found in the testimony of Fletcher B. Story and Elizabeth A. Story, his wife.    Truman Sanford, with whom this arrangement was made, was adjudged a lunatic just before the trial of this action was begun.    The plaintiff is the wife of Truman Sanford, and was coadministrator with him of the estate of John Hill, her father.    The plaintiff was not present at the time the alleged agreement was made. John Hill died in 1873, and the alleged agreement was made in March, 1874, at the house of Fletcher B. Story.

On the part of the plaintiff, it is claimed that the testimony of Fletcher B. Story and his wife is insufficient to establish the claim of one of them against the estate of a deceased person, or to prove a contract made with an administrator who has since become a lunatic. Fletcher B. Story is directly interested in the result of this action,

and his wife is almost as much interested in her husband's success. The effect of their testimony, if held sufficient, is to destroy the force and effect of a written instrument under seal. A number of cases are cited by plaintiff bearing upon this point: Morgan v. Freeborn, 68 Hun, 296, 22 N. Y. Supp. 982; Forbes v. Chichester (Sup.) 8 N. Y. Supp. 747; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; Rowland v. Howard, 75 Hun, 1, 26 N. Y. Supp. 1018; In re Farian's Accounting, 31 Abb. N. C. 159, 28 N. Y. Supp. 95. The rule seems to be established that claims of this kind must be clearly and satisfactorily made out.

If there were no other evidence with which to establish the defense set up in the answer, besides the testimony of Fletcher B. Story and his wife, the defendant could not be said to have made out his case in a clear and satisfactory manner. But, more than 20 years after this alleged contract had been made, defendant and his wife went out to see the plaintiff in regard to the release. They told her of the contract between her husband and Fletcher B. Story, and that they had heard she was about to foreclose the mortgage and hold Mr. Story liable on his bond for the deficiency. They then asked her for a written release. At some period during the conversation, Truman Sanford came in the house where they all were. What was said by Mr. Sanford is not in evidence. The Storys remained at Mrs. Sanford's house for several hours. The testimony of the Storys and of the plaintiff as to what was said on this occasion differs in several particulars, but it clearly appears that Mrs. Sanford did not deny that an arrangement had been made with Truman Sanford for the release of Fletcher B. Story from the bond. It is true that Mrs. Sanford says that she knew nothing about the release until that day, but her husband was in the house nearly all the while Mr. and Mrs. Story were there, and could easily have satisfied her as to whether their statements were correct. Truman Sanford was in apparent good health at this time. At least, there is no evidence to show that he was not of sound mind and memory. The only reason Mrs. Sanford gave why she would not execute a written release was that her son John attended to her business, and that he was not at home. The silence of the plaintiff at this time, when she ought to have spoken, and to have informed herself if she had any doubt, is a significant circumstance, and strongly corroborates the testimony of Fletcher B. Story and his wife in regard to the contract of release. The two latter both say that Mrs. Sanford told them that Mr. Story could have had a release at that time, if he had asked for it. Mrs. Sanford says that she does not remember of using those words, and does not think she did. If her husband had told her on that day, or at some other time, that such an agreement had been made, it is quite likely she would have used these words. If he had not so informed her, her denial would have been much stronger than it is in her testimony. On the other hand, if Truman Sanford had informed his wife that he had made no arrangement to release Fletcher B. Story, she would certainly have told the Storys so. It is difficult to believe that Mrs. Sanford did not, on that occasion, learn of her husband what he had to say about the contract of release. The Storys would hardly have gone to plain-

tiff's house with a lie in their mouths, if they could have been so easily refuted by Mr. Sanford.　This also shows candor and good faith in the claim which they allege.　Counsel for the plaintiff says that it is not probable that Mr. Sanford would have agreed to release Mr. Story, and to take his mother as security for the amount of the bond.　The situation, however, is vastly different now from what it was at the time this contract was made.　In 1874 the land covered by the mortgage was worth about $4,000.　In 1887, when the mortgage came due, the land was worth about $3,000, and the mortgage had been reduced to $2,050.　Two years before the mortgage came due, Amos Story, brother of Fletcher, offered to pay the Sanfords the whole amount of the mortgage, and they refused to take it.　At the present time it is supposed that the land will not bring enough in market to pay the amount due and costs.　I shall therefore hold that the evidence upon the subject of the release is sufficiently strong to clearly and satisfactorily establish a contract to release, as testified to by Mrs. Story.

The testimony of Mr. and Mrs. Story is criticised by plaintiff's counsel.　The fact that they do not satisfactorily explain why the deed made by them to the parents of Fletcher B. Story is dated on one day, and the acknowledgment not made until about two weeks afterwards, is immaterial in this case.　The conflict between their testimony and that of Mr. Gallt as to the number of interviews had with him, and what was said on those occasions, is also immaterial. Possibly, their memory is not of the best, but I see no evidence of a willfully wrong statement upon a material question.

It is claimed by counsel for the plaintiff that the contract made between Fletcher B. Story and Truman Sanford for the release of the former from his bond is an executory one, and that such contract, made by an administrator, cannot bind the estate of a deceased person.　The following adjudged cases are cited upon this point:　Hall v. Richardson, 22 Hun, 444; In re Kirkpatrick's Estate, 9 Misc. Rep. 231, 30 N. Y. Supp. 283; Austin v. Munro, 47 N. Y. 360, 366; Schmittler v. Simon, 101 N. Y. 554, 5 N. E. 452.　It seems to be well established that an executor or administrator has no power to bind the estate represented by him through an executory contract having for its object the creation of a new liability, not founded upon the contract or obligation of the testator or intestate.　It is to be observed, however, that the cases cited relate to pecuniary obligations created or assumed by an executor or administrator, not growing out of any contract or obligation of the testator or intestate.　But executors and administrators have certain authority and power over the property of the estate vested in them, and all acts done by one of them within the scope of this authority is binding on his associates.　Thus, it is stated in Wheeler v. Wheeler, 9 Cow. 34, that acts done by one executor which relate "to the delivery, gift, sale, or release of the testator's goods are deemed the acts of all."　Barry v. Lambert, 98 N. Y. 300, was an action to enforce a trust which had been created by the executors, and not growing out of any acts or obligations of the testator.　The contract was held enforceable against the estate. The court says (page 308) one executor "may release or pay a debt,

assent to a legacy, surrender a term, or make an attornment, without the consent or sanction of the others"; again (on page 309), "But having the original power to transfer the property of the estate for the purposes of their trust, any act, whether performed by one or all, which has this effect, is within their authority, and binds the estate." Bostwick v. Beach, 103 N. Y. 414, 9 N. E. 41, was an action to compel executors to execute a deed of real estate, for the sale of which they had made an executory contract of sale. The court says on page 421, 103 N. Y., page 41, 9 N. E.:

"We entertain no doubt that where the executors of the will of a deceased person, empowered by the terms of the will to sell his real estate, enter into an executory contract for such sale, performance of such contract may be enforced in equity, at the suit of the purchaser."

If an executor may be compelled to convey real estate which he has agreed by an executory contract to sell by virtue of a power of sale contained in a will, it is difficult to see why an executor or administrator may not be compelled to perform an executory contract to sell personal property, or release a debt,—power of sale and of release being given to him by law. Accordingly, in Johnston v. Wallis, 41 Hun, 420, it was held that executors who had made an executory contract to assign a judgment belonging to the estate could be compelled to perform the contract. The court says:

"That an executor in some cases may bind the trust is settled. As the executor is the legal owner of the property, and his duty is to sell and convert it, I think his executory contract, if not improvident, will bind the estate."

The decision in this case was affirmed in the court of appeals. 112 N. Y. 230, 19 N. E. 653. On page 233, 112 N. Y., page 653, 19 N. E., Judge Finch, who wrote the opinion, says:

"In this case, therefore, the defendants were owners of the judgment, and could lawfully contract for its sale. Having done so, they were liable upon that contract, which could be enforced against them, because they made it, and it did not derive its existence from any act or dealing of their testator. We agree, therefore, with the courts below, that the action could be maintained."

We shall hold that an action to compel the specific performance of an executory contract, made by an executor or administrator, to release a debt, can be maintained.

In this case the defendant claims that his defense is based, not upon an executory, but upon an executed, contract. He does not ask that the plaintiff execute a written release of his obligation on the bond. He claims that the acts done and performed by him under the contract between him and Truman Sanford constitute a complete contract, and is a perfect defense to a claim for his personal liability on the bond in suit; that, while a written release would be evidence of the performance of the contract, yet the facts proved by parol are equally available as a defense. It seems to me that this point is weighty and important. I do not care now to discuss this point, but will hold with the defendant in his conclusion.

The defendant Fletcher B. Story makes a further defense to the claim of his liability on the bond. He claims that, subsequent to the conveyance of the mortgaged premises by him to his father and mother, the defendant Amos Story, brother of Fletcher, and who ac-

quired his mother's interest in said premises, made an agreement with Truman Sanford, executor as aforesaid, on behalf of himself and his father, that the rate of interest on the bond and mortgage in question should be reduced from 6 per cent. to 4; that pursuant to such agreement the payment of said bond and mortgage was extended from year to year; that, in each year since 1886, interest on said bond has been paid at the rate of 4 per cent.; that the value of the mortgaged premises at the time of the maturity of the mortgage was $3,000, and has since depreciated, until, at the time of the commencement of this action, it would not sell for more than $1,500. Defendant Fletcher B. Story claims that this change in the rate of interest is a material alteration of the bond, and that he was thereby released. It is admitted that, subsequent to the conveyance of the mortgaged premises to his father and mother, Fletcher B. Story became a mere surety on the bond. Paine v. Jones, 76 N. Y. 274. It is also admitted that if a valid contract was made, reducing the rate of interest from 6 per cent. to 4 per cent., without the consent of the surety, it was such an alteration of the bond as would release him from all obligation to pay the amount secured by the bond, or any part thereof. Bank v. Webster, 1 N. Y. Law Bul. 70. A contract which will discharge the surety must be founded upon a consideration. An agreement without a consideration in it could not be enforced, and would not discharge the surety. Reynolds v. Ward, 5 Wend. 502. A mere acceptance of 4 per cent., although the holder of the mortgage says that the rate shall not be more than 4 per cent., does not release the surety. The only witness upon this part of the defense was Amos Story. He says that, a year or two before the mortgage became due, he had a conversation with Mr. and Mrs. Sanford in relation to the rate of interest upon the bond and mortgage in question. His testimony is substantially as follows:

"I asked Mr. and Mrs. Sanford if they would take the money on the Hill bond and mortgage. Truman said it was not according to contract, it was not due, and he would not accept it. I said that he ought to let me have it, because I could get a lower rate of interest (four per cent.) of Thompson King. They said I could have it at that. Then I asked for a writing at four per cent., the same as Mr. King had offered. Truman said, 'Let it be as it is, without a writing.'"

The witness stated that he had seen Mr. King, and he had promised to let him have the money at 4 per cent. After this time interest was paid at the rate of 4 per cent. So far as this contract has been executed, it is undoubtedly binding, or at least may be made so; but if it is without consideration, so far as it is unexecuted, it is void, and the mortgagee could repudiate it. McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458. Defendant claims that there is a consideration expressed in it: Firstly, Amos Story bound himself to pay the interest. But I fail to find any such agreement in the contract. It would be doubtful whether Amos Story could bind himself to pay the debt of a third person, without an agreement in writing subscribed by him. Secondly, it is said Amos Story deprived himself of the right to borrow the money of Mr. King. But I find no provision in the arrangement made which deprived the Storys of the right of borrowing the

money of Mr. King, or of any other person, at any time. Thirdly, it is claimed that the time for the payment of the bond and mortgage was extended by this agreement. Nothing was said in the conversation about extending the time of payment, and I find nothing which would deprive the Storys from paying the bond and mortgage when they became due, or upon giving the notice stipulated in the instrument. For these reasons I disallow the defense which is based upon the reduction of the rate of interest from 6 per cent. to 4.

The complaint is dismissed as against Fletcher B. Story, and judgment of foreclosure and sale is directed against the remaining parties defendant. Ordered accordingly.