## CONAGHAN v. GERMAN SAVINGS BANK IN CITY OF NEW YORK.

### (Supreme Court, Appellate Term.  June 10, 1907.)

GIFTS—CAUSA MORTIS—EVIDENCE—SUFFICIENCY.

To establish a parol gift causa mortis, the donee, who had known the donor only a few months, testified that while the donor was at a hospital for an operation she gave the donee her bank book, with the statement that the donee should take it as it was.  The donor remained at the hospital until her death, 11 days later.  The bank book remained in the possession of the donee.  A witness testified that the donee, after the donor's death, stated that the donor gave her the bank book and told her to take care of it, and that she would be home in 3 or 4 days, and that she did not think she was going to die.  *Held* insufficient to establish a gift.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 154, 155.]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Isabella Conaghan against the German Savings Bank in the City of New York.  From a judgment for plaintiff, defendant appeals.  Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

Amend & Amend, for appellant.

John W. Browne, for respondent.

FITZGERALD, J.  Caroline De Comeau, deceased, had been a depositor with the defendant, and at the time of her death there remained to the credit of her account the sum of $408.87.  Plaintiff claims that his money was given her by the deceased, and upon a refusal by defendant of payment upon her demand brings this action for its recovery.

To support her complaint plaintiff offered only her own testimony, and her story substantially is that the deceased, who appears to have led a solitary kind of life, occupied a furnished room at plaintiff's house at 49 Perry street in July, 1906, and lived there until October following; that during that time deceased was sick, but from what ailment she was suffering is not clearly ascertainable from the record. Plaintiff claims to have been "very kind to her" and "to have poulticed her finger and washed her ear and nose every two hours, which at times were very offensive."  On October 3d deceased went to the Manhattan Eye and Ear Hospital for an operation upon her ear.  Plaintiff accompanied her, and claims to have assisted in undressing her preparatory to the operation, and testified that while so engaged the following transaction took place:

"I told her not to be worried at being alone.  She said: 'I am without a living soul.' . I said: 'Do not worry, I will treat you as a daughter would her mother.'  I said: 'You will not feel worried, will you?'  She said: 'No, I feel perfectly safe.  I know how you have worked for me and waited upon me.'  When she was undressed, she took her bank book, just as it is now, only the spring was not opened, and handed it to me.  She said: "This is my bank book.  You take it, just as it is; for a friend in need is a friend indeed.  I only wish it was more, and that I could do more for you.'"

Deceased remained at the hospital from this time until her death, which occurred 11 days thereafter, and according to the testimony the bank book has remained ever since in plaintiff's. possession.

Lydia S. Le Bau, a witness called on behalf of defendant, testified that she had a conversation with plaintiff after Miss· De Comeau's death, and that plaintiff told her that:

"Miss De Comeau gave her the bank book, and told her to take care of it, and that she would be home in three or four days. She did not think she was going to die." ·

A gift or contract claimed to have been made by a deceased person should be scrutinized with the utmost care, and the plaintiff should be allowed to recover thereon only in the event that she establishes it by the clear and convincing testimony of disinterested witnesses. In Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916, it is said:

"We have been emphatic in condemning these agreements because 'they have become so freqent in recent years as to cause alarm.' We have been rigid and exacting as to the sufficiency of the evidence to establish them, and have condemned proof thereof 'through parol evidence given by interested witnesses.' As 'such contracts are easily fabricated and hard to disprove. because the sole contracting party on the one side is always dead when the question arises,' we have declared that they should be in writing and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses."

Farian v. Wiegel, 76 Hun, 462, 28 N. Y. Supp. 95, is nearly identical with the case at bar; the difference being that the testimony in support of the gift was there given by the donee's wife, and this was held unsatisfactory and insufficient, although witness, unlike plaintiff herein, was not legally an interested party. In Davis v. Davis, 104 N. Y. Supp. 824, it was said that the evidence of defendant and her brother was insufficient, because "both had a very deep interest in establishing the alleged gift."

It cannot reasonably be claimed that deceased anticipated any fatal result from the operation undertaken to relieve her ear. Otherwise her health was good. Why, then, should she give to any one, and particularly a comparative stranger, the entire fruits of her small economies. There is nothing before us to show that she and plaintiff were acquainted for a period longer than four months. Another fact of much significance was the failure of the plaintiff to call the hospital nurse or account for her failure to do so; for, conceding that the nurse may not have heard all of the conversation between the parties, she might at least have been able to corroborate plaintiff as to the delivery of the book. While the court below had the advantage of seeing the witnesses and of observing their intelligence, conduct, and demeanor generally, and while these circumstances should weigh. very strongly with appellate courts in reviewing findings of facts, yet for the reasons stated, and within what seem to be well-settled principles, the judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.