In the Matter of the Estate of EDWARD J. GRAMM, Deceased.

Surrogate's Court, New York County, November 23, 1935.

*Joseph A. Cox*, for James F. Eagan, public administrator.

*Irving A. Heimlich* [*Abraham Lillienthal* of counsel], for the claimant-respondent.

*Meyer Loebelson*, for William Knipp, John R. Gramm and others.

DELEHANTY, S.  In this proceeding respondent claims ownership of property of the deceased valued in excess of $18,000 and rep-

resented chiefly by bank books showing deposits in savings banks. His claim of title to these assets is based upon a gift *causa mortis*.

There is proof in the record that deceased regarded respondent as his most intimate friend and expressed to others an intention to benefit respondent upon deceased's death. The court is satisfied that there was a transaction in the home of respondent which involved a transfer by deceased to respondent of a sealed envelope. The court is satisfied that the intention of deceased was to vest in respondent title to whatever was in that envelope provided deceased died while at the hospital to which he was about to go. On the same day that the transfer of the envelope was made deceased went to the hospital where he died within a day or two.

From the foregoing it will be seen that the only element lacking to establish a gift *causa mortis* is proof of identity of the subject-matter of the gift. The envelope delivered to respondent was sealed and tied at the time. While its general outward appearance has been described, it is obvious that no person present at the time of the transfer, other than deceased, could have known of its contents. The sole evidence of the contents is furnished by the wife of claimant who beyond doubt is a vitally interested witness. She is not disqualified for that reason nor is the court warranted in rejecting her testimony merely because of interest. The fact that she is interested may be taken into account, however, in determining whether the property has been identified. The issue here presented is really one of credibility of claimant's witness, his wife. Comment should be made upon some of the facts which bear upon the decision of that issue.

It is part of respondent's proof that all the goods and chattels of deceased were taken from deceased's furnished room to the residence of respondent on the day that deceased went to the hospital. It follows of course that respondent and his wife had full and complete access to all the property of deceased whether it was in the envelope or elsewhere among his belongings. The necessary consequence of this fact is that the assertion by respondent's witness that she found bank books evidencing deposits of $18,000 in the envelope finds no support in the circumstance that respondent produced the books. It must be assumed that somewhere among deceased's belongings his bank books would be found. Since respondent and his wife had access to deceased's goods, possession of the bank books furnishes no circumstantial guaranty that they ever were in the envelope handed over to respondent by deceased.

While witnesses were called in to attend the *delivery* of the envelope no witness watched the *opening* of the envelope. Only

respondent's wife (or possibly respondent and his wife) saw that event. Only respondent's wife testifies to the *opening* of the envelope. In testing her credibility it is fair to note whether in reporting transactions where others were present there is variance between her testimony and that of disinterested witnesses. There were two such witnesses. They were present when the envelope was turned over. Each was asked to say what was said by deceased at the time of delivery. The first said: " Mr. Gramm had an envelope, a rather large black envelope tied with a string and sealed with sealing wax, red sealing wax. He told us, he says, I want you to be a witness to this that I am giving this envelope to Mr. Benson. I am going to the hospital and if I come out of the hospital I want Mr. Benson to give it back to me. If I don't I want Mr. Benson to have it." He quotes deceased as saying that the envelope contained " valuable papers." On cross-examination he repeated substantially the same thing.

The second said: " Mr. Gramm said I want you two men and Mrs. Benson to witness that I am giving this envelope to Mr. Benson. I am going to the hospital. If I don't come back I want Mr. Benson to have it. If I do come back I want Mr. Benson to return it to me." This witness repeated the statement of deceased in identical language on direct examination. On cross-examination he repeated the statement of deceased in almost identical words with a change in order of the last phrases and with a substitution of the word " bag " for the word " envelope." There can be no doubt that these witnesses were given every opportunity to say all that was said by deceased and that they undertook to repeat the exact language of deceased.

It is a fair test of the credibility of respondent's wife to compare her testimony with theirs concerning this transaction. She quotes deceased much as the others did but she reports him as saying: " But I want to make sure that I settle up all my private estate. Whatever belongs to me I want to settle all up." It is notable that neither of the other two reports that vital statement. She quotes deceased further: " When he handed him that brief case, he says, there was his bank books and his investment book in it, all he possessed of any value." Neither of the other two present reported this most important statement. On cross-examination she repeated deceased's statement thus: " I was advised to go to the hospital and I want to straighten out my affairs and whatever — I am giving this here to Mr. Benson, everything that I possess, my bank books, my stock — some stock book or something I think he said."

That respondent's wife was fully alive to the tenor of her testimony generally is apparent from her commentary, found on page 22 of the minutes, where she says of a certain item, " I didn't know that was material." Analysis of these differences in report of a single conversation is revealing. *She alone* mentions bank books. *She alone* mentions stocks. *She alone* mentions investment book. *She alone* mentions stock book. Every one of these relate to *the vital fact of identity.* It does not seem credible to the court that both of the other witnesses would fail to remember even one of these four vital references, if deceased had made them. Only respondent's wife testifies to what might be called this anticipatory verification of what she says she found in the envelope. Where a contradiction so complete is shown on a subject-matter so vital, the court cannot accept her testimony as dependable. It must be found on this proof that she deliberately interpolated in her report of deceased's conversation matter which she well knew to be " material." Her testimony as a whole is rejected.

Having reached that result, the court is without evidence of what was in the envelope. There may have been something of value in it. Probably there was. Whether the bank books were in it certainly remains a matter of doubt. One at least of deceased's bank books was not in it. One witness testified that deceased said only that " valuable papers " were in it — a term which a layman certainly would not use in describing a savings bank book.

A case in this department (*Farian* v. *Wiegel,* 76 Hun, 462) points out how vital in a case like this is proof of what was in the package at the time of delivery. The presiding judge in that case concurred in the result on the ground that identification of the donated property was insufficiently established. As part of his commentary he said: " There was ample opportunity upon the part of the husband to put into that package anything he pleased." That is precisely the situation here. There was ample opportunity for respondent and his wife to find(?) in that envelope anything they pleased. (See, also, *Podmore* v. *Dime Savings Bank,* 29 Misc. 393; affd., 55 App. Div. 624.)

The immutable rule is that in respect of every element proof of gifts must be clear and convincing. That rule was not made for one case. It is a rule which the courts have found to be salutary in the extreme. Appellate courts have recognized, as have the trial courts, that situations might arise where the wishes of a deceased might be defeated in whole or in part by the application of the rule. But they have applied the rule, nevertheless, because failure to apply it would mean letting down the bars to fraud and imposition. A donee has the burden of establishing an alleged gift. The max-

imum that can be said concerning the proof on the part of respondent is that deceased might have given him the property. That does not suffice. Respondent has failed to sustain the burden which is his. (*Matter of Booth*, 215 App. Div. 516, and cases there cited.) The gift claimed has not been established and accordingly the prayer of the petition must be granted.

Submit, on notice, decree accordingly.