# SUPREME COURT.

## ALFRED BUCKHOUT agt. JOSEPH HUNT, executor, &c.

An *executor* (or *administrator*) stands in the position of a *trustee*, not as a debtor, in respect to the creditors of the estate. And like all trustees where the names of the *cestuis que trust* are not given in the deed, he is bound to exercise the utmost care and circumspection before he accepts a claim as entitled to payment from the estate, and the law will afford him all reasonable means for so doing. He cannot be coerced to pay debts short of a year from the time of granting the letters, because the various statutory provisions made for the protection of the estate, cannot be executed short of that time.

The remedies of the creditor, in the meantime, however, are not absolutely suspended: he may prosecute his action, but he must do so at his own costs and expense, and not at the costs and expense of the estate, unless he can show that the executor has been guilty of some laches or illegal act in regard to the adjustment of his claim.

To entitle a plaintiff to charge an executor (defendant) with the costs of the action, he must establish to the satisfaction of the court, 1st. That the demand was unreasonably neglected, or 2d. That it was unreasonably resisted, or 3d. That the defendant refused to refer the matter in controversy to three disinterested persons, pursuant to the provisions of (§ 36) the Revised Statutes.

In this case *held*, that it was a complete answer, (as it would be in any case,) to any suggestion of unreasonable *neglect* on the part of the executor, that the demand was exhibited to him just thirty-four days from the time of issuing the letters, and was prosecuted just fifteen days after its presentation, and especially as the first item was rather an unusual one in an account current, and not calculated to bespeak the confidence of the executor, and assure him of its entire accuracy, to wit: "$5,000 for personal services as a nurse."

The executor being prosecuted with indecent haste, and before he had time to turn round, had no alternative but resistance; to resist to the utmost was manifestly his duty, and a suggestion of unreasonable resistance could not be supported, although the referees in their report of the trial of the cause certified that the claim was unreasonably resisted. As to that matter, the referees entered into a province which had not been assigned to them.

Besides, it has been settled by a series of decisions in this court, that when a claim against the estate is materially reduced upon the trial, (as this was, over $2,000,) the resistance offered by the executor is not unreasonable.

Before a claim can be *referred*, and before there is any cause for its reference, it must have been disputed or rejected, and until the latter occurrence the claim is not in a condition to propose a reference. A rejection of the claim, therefore, is not equivalent to a refusal to refer. They are different and independent acts.

Buckhout agt. Hunt.

The proposition to refer must proceed from the claimant after his claim has been rejected; and unless such a proposition appears affirmatively, he is not entitled to costs against the executor personally, or against the estate.

*Orange Special Term, November,* 1858.

MOTION by plaintiff for costs of action on judgment entered upon report of referees, and for an extra allowance.

FRANCIS LARKIN, *for the plaintiff.*
WAKEMAN & LATTING, *for defendants.*

BROWN, Justice. The defendant is the executor of the last will and testament of Augustus Hunt, who died on the 30th of January, 1857. The will was proved and letters thereon granted to the defendant on the 25th day of February thereafter. On the 31st of March ensuing, the plaintiff presented his claim to the executor duly verified, and demanded payment. The affidavits are in conflict with regard to what occurred on the presentation of the bill, but I assume for the purposes of the motion, that it was disputed and payment refused. It consisted of thirty-one items, the first of which was $5,000 for personal services as a nurse, rendered from November 1st, 1854, to January 30th, 1857, giving no particulars. The other items were for money expended on the testator's account, amounting in all to the sum of $374.75. On the 15th of April, 1857, the plaintiff commenced his action in this court by the service of a summons and complaint, claiming to recover $5,374.75 with the interest. The defendant put in his answer denying the allegations in the complaint, and the action was referred upon the motion of the plaintiff's attorney, to Thomas McKissock, Selah Squires and Robert Cochrane, Esquires. On the 2d of December, 1857, the referees made their report, in which they find $2,938 due to the plaintiff for the first item in the bill, and $156.58 for the other charges, thus reducing the plaintiff's claim more than $2,000. The referees also certify in their report, that the claim was duly presented, and that it was unreasonably resisted by the defend-

ant. The referees afterwards furnished a further certificate, in which they say they were occupied fifteen days in the trial of the action, that it was difficult and extraordinary, and that in their opinion a further allowance of 5 per cent. upon the recovery of the plaintiff, would be reasonable and proper. Upon the report of the referees, the plaintiff entered up his judgment, without any order or direction of the court in regard to the costs, as well for the sums found due to him as for the costs of the action. His judgment was subsequently set aside as irregular. In the meantime the defendant obtained an order for a more specific report from the referees, which they have accordingly made, charging as their fees for making the same, the further sum of $80. The plaintiff now moves for an order granting him the costs of the action, and for an extra allowance under section 308 of the Code, and that the defendant accept the supplemental report from the referees and pay them their charges for making the same.

Three months from the time of granting the letters, are given by the statute for an executor or administrator to prepare and file an inventory of the personal estate of the deceased. And after the lapse of six months from the time of granting the letters, he may give public notice for persons having claims, to exhibit the same to him with the vouchers, at or before a day to be specified in the notice, which shall be at least six months from the day of the first publication of the notice. The claims are to be presented not for immediate but for ultimate payment, if the assets prove sufficient, and if insufficient, for a rateable proportion of whatever there may be. In respect to the creditors, the executor does not maintain the relation of debtor. His position is that of trustee to collect and hold the estate, and after he has ascertained who are the creditors, legatees and next of kin, to apply it in satisfaction of their claims, in the order prescribed by law. Like all trustees where the names of the *cestuis que trust* are not given in the deed, he is bound to exercise the utmost care and circumspection before he accepts a claim as entitled to payment from the estate; and the law will afford him all reasonable means for

so doing. He cannot be coerced to pay debts short of a year from the time of granting the letters, because the various statutory provisions made for the protection of the estate, cannot be executed short of that time. In the meantime the remedies of the creditor are not absolutely suspended. He may prosecute his action, but he must do so at his own cost and expense, and not at the cost and expense of the estate, unless he can show that the executor has been guilty of some laches or illegal act in regard to the adjustment of his claim. When the claim is presented, the executor may require that it shall be verified by the oath of the creditor, and if he still doubt its justice, he may enter into an agreement in writing with the claimant to refer the matter in controversy to three referees, to be approved of by the surrogate. Section 41 of the act in regard to the duties of executors and administrators, in the payment of debts, legacies, &c., (2 *Rev. Stat.* 30, 2d ed.,) provides that no "costs shall be recovered in any suit at law against any executors or administrators, to be levied of their property or of the property of the deceased, unless it appear that the demand on which the action was founded was presented within the time aforesaid, and that its payment was unreasonably resisted or neglected, or that the defendant refused to refer the same," pursuant to the provision to which I have referred. "The time aforesaid," doubtless means the six months given to the creditors to present their claims in pursuance of the notice to be published under section 34 of the act. When the claim in this action was presented, the time had not arrived when the executor was at liberty to give the requisite notice, and the counsel for the defendant insists that there has been no presentation of the claim within the meaning of the act. In this view I do not concur. The object of the notice is to put the executor in possession of all the claims against the estate, and furnish him with a knowledge of their nature and amount, and to protect him whenever he proceeds to distribute the estate among the creditors who have presented their claims, and the legatees and next of kin. This is evident I think from an examination of the provisions of sec-

Buckhout agt. Hunt.

tions 34, 39, 40 and 42. This object is fully attained if the claim be exhibited to and left with the executor at any time after the granting of the letters, and before he proceeds to pay out and distribute the estate.

To entitle the plaintiff to charge the defendant with the costs of the action, he must establish to the satisfaction of the court, 1st. That the demand was unreasonably neglected, or 2d. That it was unreasonably resisted, or 3d. That the defendant refused to refer the matter in controversy to three disinterested persons, pursuant to the provisions of section 36. It is a complete answer to any suggestion of unreasonable neglect to say what cannot be disputed, that the demand was exhibited to the executor just thirty-four days from the time of issuing the letters, and was prosecuted just fifteen days after its presentation. The presumption is that the defendant was a stranger to the transactions out of which the debt arose, and had no other knowledge of them, except such as the claim itself disclosed, and such as he could collect after the demand was made. The first item was not calculated to bespeak his confidence and assure him of its entire accuracy. A single charge of $5,000 due to one man for nursing another, is rather an unusual item in an account current. Until there was time for inquiry and examination into the circumstances upon which a charge so novel and extraordinary was founded, there was no room to impute neglect.

The suggestion of unreasonable resistance is equally unsupported. Prosecuted as the executor was with indecent haste, and before he had time to turn round, he had no alternative but resistance. To resist to the utmost, was manifestly his duty. The referees, it is true, have certified in their report that the claim was unreasonably resisted. But the degree of resistance which the executor might reasonably oppose to such a claim prosecuted under such circumstances was not one of the questions committed to them for determination. And in certifying such a fact, I respectfully submit they entered a province which had not been assigned to them. (*Carhart* agt.

*Blaisdell's executors,* 18 *Wend.* 531; *Gansevoort* agt. *Nelson,* 6 *Hill,* 389; *Comstock* agt. *Olmstead,* 6 *How. Pr. Rep.* 79.)

Besides, it has been settled by a series of decisions in this court, that when a claim against the estate of a deceased debtor is materially reduced upon the trial, the resistance offered by the executor is not unreasonable. (*Roberts* agt. *Ditmars,* 7 *Wend.* 522; *Carhart* agt. *Blaisdell's Ex'rs; Comstock* agt. *Olmstead, supra; Bullock* agt. *Bogardus,* 1 *Denio,* 276.)

In the present action, the claim of the plaintiff was reduced more than $2,000. So that upon the authorities referred to, the resistance was entirely reasonable and right, and such as the executor could not for any cause omit to offer. In regard to the refusal to refer, the affidavits do not show that a reference of the plaintiff's claim was at any time the subject of conversation or negotiation between the plaintiff and defendant, or any person representing them. Indeed, it is not pretended that the plaintiff ever proposed or offered to refer the claim in controversy. He relies solely upon the proposition that a rejection of the claim is equivalent to a refusal to refer. The authority for this construction is *Fort* agt. *Gooding,* (9 *Barb. S. C. Rep.* 388,) where Mr. Justice WILLARD held that an unqualified rejection of a claim unaccompanied by an offer to refer, was equivalent to a refusal to refer. This construction is unsupported by any authority, and has not been followed by any other judge. The authorities seem to be all the other way. (*Swift* agt. *Blair's Executors,* 12 *Wend.* 278; *Hawley* agt. *Skillman's Executors,* 22 *Wend.* 571; *Stephens* agt. *Clark,* 12 *How. Pr. R.* 282; *Proude* agt. *Whiton,* 15 *How. Pr. R.* 304,) which last case was affirmed upon appeal to the general term. The rejection of the claim and a refusal to refer are different acts entirely independent, and the one cannot by any logical construction be deemed the equivalent of the other. Before a claim can be referred, and before there is any cause for its reference, it must have been disputed or rejected, and until this latter occurrence the claimant is not in a condition to propose a reference. To say that a rejection of the claim is also to be deemed a refusal to refer, is to say what the executor

may not by any means intend, and to involve the estate in the expenses of a litigation, which he may have every disposition to avoid. A refusal to do an act, implies that there has been a previous request, and a refusal to refer a rejected claim to three disinterested persons, implies a previous request or offer to refer by the claimant. The proposition to refer must proceed from the claimant after his claim has been rejected. The statute admits of no other construction. To entitle the plaintiff, therefore, to an order charging the costs in this action to the defendant personally, or to the estate which he represents, it must appear affirmatively that he made a proposition or offer to the defendant to refer the subject in controversy to three disinterested persons, to be approved by the surrogate, and that such proposition or offer was refused. The papers, in my judgment, show nothing of the kind.

The stipulation that the referees shall each receive $10 per day as a compensation for their services, relates exclusively to the measure of their compensation, and does not affect the executors' liability. The second and third branches of the plaintiff's motion must fall with the first, because the costs signify all the plaintiff's taxable fees and disbursements, and unless the defendant is liable for all, he is not liable for a part.

The plaintiff's motion is denied, with ten dollars costs of opposing the motion.