APOLLONIO v. LANGLEY.

(Supreme Court, Appellate Division, Second Department.   June 23, 1905.)

1. CONTRACTS TO REIMBURSE BY WILL—EVIDENCE—SUFFICIENCY.
    A contract by decedent to reimburse plaintiff by her will for expenses
    incurred, incident to certain trips as the companion of decedent, was not
    sustained by testimony of plaintiff's husband to certain oral declarations
    of decedent, which was without any substantial corroboration, and which
    was not without contradiction as to the occasions when the declarations
    were said to have been made.

2. SAME.
    In an action on a contract by decedent to reimburse plaintiff by her
    will for expenses incurred incident to certain trips with decedent, a ver-

dict including an amount expended for apparel was not sustained by proof of declarations of decedent that any expense incurred by plaintiff by reason of going with decedent would be more than returned to her.

Hirschberg, P. J., and Miller, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Clara F. Apollonio against Edward D. W. Langley, individually and as administrator de bonis non of Frances A. Skinner, deceased. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Clarence L. Barber, for appellant.

G. A. McLaughlin (Charles B. Blair, on the brief), for respondent.

JENKS, J. The action is upon a contract of the decedent to repay in her will certain expenses of the plaintiff incident to two trips taken as the friend and companion of the decedent to the island of Bermuda. The plaintiff claimed for actual cash outlay, in round numbers, $500, for her travel and board, and $1,300 for wearing apparel, and she recovered a full verdict. It appears that the plaintiff's husband earned about $2,000 a year, and that the decedent was an old married woman, in good health, possessed of considerable property, receiving a large income, living in comparative luxury, and, according to the plaintiff, honest, honorable, and upright. The women were intimate friends. The plaintiff's case is made out almost entirely by the testimony of the plaintiff's husband as to two oral declarations made to him by the decedent on the eve of each trip. It seems strange that a woman of such character, and possessed of ample means, should ask a dear friend, in most moderate circumstances, to advance for such a purpose what was a large sum of money to the plaintiff, and but an inconsiderable sum to her, upon condition that it should be repaid by her will. It seems an extraordinary credit, in the absence of any reason therefor. It seems natural that, if such a woman made such a promise, she would keep it. There appears no reason why she should thus deceive and mulct her dear friend. They did not become estranged. The decedent did not forget. She remembered the plaintiff in her will (executed after these times), purely as a matter of affection, by providing that, in the event of the death of the decedent's husband before the decedent, the plaintiff should receive one-sixth of the residue of the estate. She who was thus moved by affection would hardly repudiate a debt due the object of her affection. It is curious that although the plaintiff within a few months after decedent's death knew of the contents of the will, which was ineffective as to her because the contingency which favored her did not come to pass, she did not file any claim until a year thereafter. It is strange that, although the plaintiff's husband wrote to the administrator, asking for a return of the presents made by his wife to the decedent, he made no mention of the failure of the decedent to discharge her debt. It is strange that the plaintiff,

months before she filed her claim, writing a cordial letter to the administrator to ask for a keepsake of the dead, should say that a ring and a pink enamelled pin would "make her happiness complete." It is passing strange that she should write: "In writing this I bear in mind what Mrs. Skinner said to me and to Mr. Apollonio upon more than one occasion—that I should be remembered substantially in her will. That I did not receive anything by devise was, I am frank to admit, a great disappointment to me"— and yet omit all reference to the fact that she had paid out a large sum of money upon the express promise that it should be repaid her by the provisions of that will. If by the said expression which follows the request for the trinkets in memoriam, "In writing this I bear in mind," etc., the plaintiff intended to express some reason why her request should be met, she certainly had a more cogent reason in the fact that her debt had never been paid.

If the decedent had said to the plaintiff or to the husband that she proposed to remember the plaintiff in her will, she did so, although the bequest was contingent. And I can conceive that, in appreciation or even expectancy of remembrance, the plaintiff might have accompanied the decedent beyond the dictates of mere friendship, and have incidentally expended her money, in the calculation that she would be compensated by the will.

So far as the plaintiff seeks to establish a contract by the decedent that she would reimburse her by her will, I think that she failed in her proof. That proof, as I have said, practically consists of the testimony of her husband to certain oral declarations of the decedent. There is no substantial corroboration. Even such proof is not without contradiction as to the occasions when these declarations are said to have been made. Contracts of this character are looked at with grave suspicion, closely scrutinized, and only sustained by the strongest evidence. Shakespeare v. Markham, 72 N. Y. 400; Roberge v. Bonner, 94 App. Div. 342, 88 N. Y. Supp. 91; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916. In the latter case, citing the authorities, and among them Shakespeare v. Markham, supra, Vann, J., says:

"As 'such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises,' we have declared that they 'should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses.' Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118; Mahaney v. Carr, 175 N. Y. 454, 67 N. E. 903; Ide v. Brown, 178 N. Y. 26, 70 N. E. 101; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Shakespeare v. Markham, 72 N. Y. 400."

Public policy demands that the rule as to the character of proof shall not be relaxed or frittered away.

If the husband's testimony satisfied the standard, yet it could not sustain this verdict, which necessarily includes the $1,300 paid out by the plaintiff at various times for her attire. For he but testifies that before each journey the decedent said that any expense incurred by the plaintiff by reason of going with the decedent would be more than returned to her. The plaintiff must have been

clothed in any event, and hence expenditures for clothing were not strictly an expense incurred by the journeys, save so far as the plaintiff's wardrobe thereby required addition or change. These expressions of the decedent would not necessarily imply her intention to assume expenses for raiment, but only to return any outlay for travel and for maintenance while on the visit to Bermuda. There is nothing to justify the conclusion therefrom that the plaintiff might charge up against the decedent $1,300 for dress, when the other expenses for travel and maintenance were but $500. It is true that the husband did testify that on one of these occasions, when his wife was trying on new shoes, and after he told the decedent that he paid $12 for them, he added, "There are other expenses attending the journey, and they are quite extensive," and that thereupon the decedent made this remark as to the expense. But as I have said, this is not sufficient to establish a contract to pay $1,300 for the plaintiff's clothes, and the decedent might naturally have thought that the husband referred to the cost of travel and of the stay in Bermuda. The context is significant. The husband testifies that he remarked:

"Well, now, Mrs. Skinner, there are other expenses attending this journey, and they are quite extensive; but what I dislike most of all is the fact that I shall be left alone this winter a number of weeks, and, in the event of my being ill or disabled, I shall have no one to care for me."

If he disliked one circumstance "most of all," I may infer that he disliked "the other expenses." If the other expenses which he then referred to were the cost of the clothes for the plaintiff, why should he dislike such outlay, provided he understood that the decedent was to return it? A gentleman in his circumstances is not expected to send his wife away on winter trips to Bermuda for pleasure, and even an advance of money for that purpose might have been disliked by him. But if the trip was to afford attire for his wife costing hundreds of dollars, thereby relieving him from a husband's usual charge, why should he "dislike" such expenses? The only possible explanation is that he disliked to advance the cost of the clothes, but this is hardly adequate if he expected that the decedent, who was well to do and financially responsible, would voluntarily relieve him from this usual marital expense.

I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., and MILLER, J., dissenting.