The opinion then refers to cases where, within the contemplation of some statutes, "residence" and "domicile" would not be treated synonymously. Recurring now to the facts, I find that the defendant refrains giving an account of his residence prior to 1902. It appears, however, that the defendant since 1899 has been a member of a banking firm doing business in Nassau street, in this city, with which, prior to that date, he had been connected in the capacity of clerk. He was married in England in 1898, and, according to the plaintiff, shortly after their marriage she left her home in England to follow him "into his own country." ' It further appears that defendant's business required him to travel very considerably, and that the parties since their marriage have lived, according to defendant, "at various places in America, notably Raton, New Mexico, Morristown, New Jersey, and in the city of New York.' In December last defendant registered himself as the owner of an automobile and described himself as of No. 32 Nassau street, New York City. In January last he advertised in one of the daily papers in the city of New York for an auditor and published his address as No. 31 Nassau street, in this city. We thus find that his principal business location is in this city, that his business life was directly connected with the city for many years, that although he has resided at many different places during the past few years, and, although he has rented for a long term of years a home in England, it would nevertheless be a mooted question what his actual domicile is, or, in other words, under the De Meli Case, supra, what his "residence" was when the action was commenced. It seems to be undisputed that when this action was begun both parties actually resided in New York, and hence it may be argued that under subdivision 1 of section 1763 of the Code jurisdiction attached. But, without presuming now to determine the question of residence, I think that both under the state of the law and the facts such a debatable issue as to "residence" is presented as to warrant the granting of alimony and counsel fee pendente lite under the authority of Gray v. Gray, 143 N. Y. 354, 38 N. E. 301, to which I adverted in my former opinion, and therefore I do not deem it proper to disturb the previous disposition of the motion.

Motion for reargument denied, with $10 costs.

---

(54 Misc. Rep. 198)

### In re HUMPHREY.

(Surrogate's Court, Dutchess County. April, 1907.)

1. EXECUTORS—ACCOUNTING—PAYMENT OF MORTGAGE.

Where an executor paid a mortgage on a farm devised to him by his mother out of the funds of the estate, without showing any agreement by testatrix to pay it, it was unauthorized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 548.]

2. SAME.

Evidence on executor's accounting *held* insufficient to show an agreement by testatrix to pay a mortgage on a farm devised to executor.

In the matter of the settlement of the accounts of Seymour W. Humphrey, executor of Mary J. Humphrey. Decree entered.

George Card, for executor.

Walter Farrington, for Seymour W. Humphrey.

George Wood, for Martha Hammond.

Alexander Dow, for Jennie Chamberlain.

HOYSRADT, S. Objection has been made to an item in the account of this executor whereby he credits himself with $236 paid September 26, 1906, from the assets of the estate to cancel a mortgage on his own real estate.

It has been shown that Mary Jane Humphrey by her will, admitted to probate in this court January 2, 1906, devised to her son, Seymour W. Humphrey, her executor, a farm at Pleasant Valley, N. Y. At the time of her death, and, in fact when the will was executed, there was a mortgage of $200 on this farm which the son claims his mother agreed to pay, and he has, before any effort to legally establish such an agreement or to make a claim against the estate, paid the mortgage with the estate funds. After destroying the mortgage papers, he now asks the court to ratify this procedure after objection has been made to the account and in defense of his position the executor has sought to establish the alleged contract with his mother; that she should pay this mortgage. The transaction is not such as to invite the credulity of a court at the outset, and an examination of the record discloses that the agreement has not been established within the familiar principles which the courts have adhered to in cases of this character. The evidence in support of this alleged agreement has been given by the executor's son, his sister, and his attorney, and is to the effect that the testatrix had stated that, if her son Seymour would buy this place and make repairs, she would pay $500 of the purchase price if he would pay the balance of $50. It is conceded that she paid $300 of the purchase price. The attorney has testified that at the time of the preparation of her will, executed October 30, 1901, she stated that she intended to pay off the mortgage from money she expected to receive, but she did not wish to make a provision in her will for such a payment.

The question presented is entirely dependent upon the sufficiency of the proof tending to establish the agreement. In a recent case (Holt v. Tuite, 188 N. Y. 17, 80 N. E. 364), the Court of Appeals has restated the principles applicable to cases of this character in these words:

"We have repeatedly held that such a contract must not only be certain and definite and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence. * * * We have been rigid and exacting as to the sufficiency of the evidence to establish such contracts and condemned parol evidence given by interested witnesses, as such contracts * * * are hard to disprove, because the sole contracting party on one side is always dead when the question arises, we have declared that they should be in writing, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses."

Among the most recent cases in which this rule of the Court of Appeals has been applied are Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916; Roberge v. Bonner, 185 N. Y. 268, 77 N. E. 1023; Apollonio v. Langley, 106 App. Div. 43, 94 N. Y. Supp. 274; Kane v. Smith,

109 App. Div. 164, 95 N. Y. Supp. 818; Lucas v. Boss, 110 App. Div. 224, 97 N. Y. Supp. 112; Matter of Schroeder, 113 App. Div. 210, 99 N. Y. Supp. 176. Measured by this rule, the claim in the case at bar is not made out. The proof is not given by disinterested witnesses. There is no adequacy of consideration, and the most that can be reasonably deduced from the statement of the testatrix, if proven, would be that she intended to make her son a gift which she afterward decided not to do, as it is shown that she had ample funds to complete such a gift had she desired to do so.

The action of the executor in paying off the mortgage was unauthorized. The item crediting him with $236 is disallowed. In other respects the account is allowed after eliminating all the items of the executor's traveling expenses as agreed on the hearing.

Decreed accordingly.

---

(54 Misc. Rep. 201)

In re DIDION'S ESTATE.

(Surrogate's Court, Erie County. April, 1907.)

TAXATION—TRANSFER TAX—BEQUEST FOR MASSES.
    A bequest to a Roman Catholic Church for masses for the repose of the
    soul of testatrix is exempt from transfer tax under Transfer Tax Law, c.
    908, p. 869, § 221.

In the matter of the appraisal of the estate of Mary Didion. Appeal by comptroller from the decree confirming appraiser's report. Affirmed.

Orlin J. Colburn, for State Comptroller.
John F. Mueller, for executrix.

HART, S. The testatrix, Mary Didion, after making special provison in her will for the payment of funeral expenses, by the second paragraph thereof makes the following bequests:

"I give, bequeath, and devise and direct that $200.00 be given to the Assumption Church of Lancaster, N. Y., (so-called St. Mary's Church) for masses to be read for the repose of my soul, and one hundred ($100.00) dollars be given to the St. Mary's Church of Buffalo, N. Y., for the repose of my soul."

The transfer tax appraiser refused to tax these legacies. This appeal is taken from a decree of this court, entered on the 12th of December, 1906, confirming the report of the appraiser. The attorney for the appellant contends that the above bequests are taxable, claiming that, "under the rules of the Roman Catholic Church, all bequests for masses go to the priest, individually, who says the masses, and do not go to the church as a religious or charitable body, or for the religious or charitable purposes of the church." The attorney for the executrix has made proof by affidavit to the contrary. No attempt has been made, on the part of the executrix, to include the legacies in the schedule of funeral expenses of the testatrix; and the case is therefore to be distinguished from Matter of McAvoy, 112 App. Div. 377, 98 N. Y. Supp. 437.

The legacies are bequeathed directly to religious bodies; the provision for masses being merely collateral and incidental. I am therefore