LAUGHLIN, J., concurs.

---

### SCHOU v. BLUM.

(Supreme Court, Appellate Division, First Department. June 7, 1907.)

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—EVIDENCE.

Parol claims against a decedent's estate are looked upon with suspicion, and, when sought to be enforced, are closely scrutinized and never sustained unless the evidence is very satisfactory.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1872.]

2. SAME—SUFFICIENCY OF EVIDENCE.

Evidence in an action against an administrator *held* insufficient to show that plaintiff loaned decedent money or performed services for him, or to sustain a verdict on value of the services alleged to have been rendered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1873.]

3. EVIDENCE—EXPERT OPINION —INCOMPETENCY.

In an action to recover for services rendered decedent, a professional nurse's testimony as to the value of plaintiff's services was inadmissible; plaintiff not being a professional nurse, or having rendered services as a nurse, and the witness having admitted that she knew nothing as to the value of the services actually rendered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2216.]

4. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—EVIDENCE—COMPETENCY.

In an action to recover for services rendered decedent, evidence that before the employment he had endeavored to make plaintiff a beneficiary in an insurance policy was inadmissible.

**5. SAME.**

In an action to recover for services rendered decedent, evidence that he had said he was going to provide for plaintiff in his will was inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1871.]

**6. SAME—ACTIONS—COSTS.**

Under Code Civ. Proc. §§ 1835, 1836, forbidding costs in an action against an administrator unless a claim has been duly presented and payment unreasonably resisted or reference refused, such facts to be certified by the trial judge or referee, the certificate is indispensable as the basis of costs against the administrator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 1948.]

Appeal from Trial Term.

Action by Magdalena Schou against Jacob Blum, administrator. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and LAMBERT, JJ.

Louis Wendel, Jr., for appellant.
David Bernstein, for respondent.

McLAUGHLIN, J. This action was brought to recover the sum of $3,000 for services as nurse, alleged to have been rendered to defendant's intestate, and the sum of $210 alleged to have been loaned to him. The alleged services covered a period from August 11, 1901, to September 10, 1904, at $2.50 a day for 1,013 days, and from September 10, 1904, to January 1, 1905, during his last illness (117 days) at $4 a day. The jury rendered a verdict in favor of the plaintiff for the full amount claimed, and from the judgment entered thereon, and an order denying a motion for a new trial, the defendant appeals.

I am of the opinion the judgment must be reversed, not only upon the ground that it is against the weight of evidence, but also because errors were committed at the trial. The intestate was a silk dyer, owning certain premises in the city of New York upon which his business was conducted, and where he had one room in which he lived. Some 20 years before his death he boarded with the plaintiff and her husband for 3 or 4 years, and from that time to the time of his death they were very intimate friends. Some time in December, 1904, by reason of a serious illness, he was taken to the plaintiff's house, where he died about 10 days later. To establish the claim for services, the plaintiff relied substantially upon the testimony of her husband, who testified, in substance, that in August, 1901, the decedent complained to him of being sick and asked if the plaintiff might come and take care of him; that he consented on condition that the decedent should pay her for her services, which he agreed to do; that the services were rendered by the plaintiff, and that he frequently asked the decedent for the money which was due his wife therefor; that the decedent gave various reasons for not paying, but invariably promised to pay later on, which he neglected to do; that the plaintiff would start for the decedent's room about 10 o'clock in the morning each day, and return about 5 o'clock in the afternoon; and that he was at work all

day during this time, and did not see his wife go or return. His testimony, therefore, as to the actual rendition of any service, is of little or no value. There is, however, evidence to the effect that the plain- tiff frequently went to the decedent's room, and at times was seen taking care of his rooms, cooking his meals, and dining with him; but during all of this time the evidence clearly shows that the deceased was looking after his business, even doing some of the manual work himself—drawing all of his own checks, paying the workmen in his establishment, and taking general supervision of it. There is no evidence which would justify a finding that during any of the time, except a few days immediately prior to the decedent's death, the plaintiff rendered any service as a nurse, or that the decedent needed a nurse. Indeed, the contrary appears. He not only looked after his business, but was frequently seen at restaurants, theaters, and other public places of amusement. It is true there was evidence to the effect that he was seen much in plaintiff's company, that he frequently took her driving, and it is evident they appeared to enjoy each other's society. What the plaintiff's motive was in spending so much time with him is of no importance; but, in view of the uncontradicted facts as to what the decedent did, it is apparent that his health was such as not to require the services of a nurse, and that she not only did not act as such, but did not consider herself employed as a nurse.

The existence of the alleged contract of employment depends upon the testimony of her husband. There is no substantial corroboration. Contracts of this kind are looked upon with suspicion, and, whenever sought to be enforced, are closely scrutinized, and never sustained unless the evidence is very satisfactory. Roberge v. Bonner, 94 App. Div. 342, 88 N. Y. Supp. 91, affirmed 185 N. Y. 265, 77 N. E. 1023; Walbaum v. Heaney, 104 App. Div. 412, 93 N. Y. Supp. 640; Apollonio v. Langley, 106 App. Div. 40, 94 N. Y. Supp. 274; Shakespeare v. Markham, 72 N. Y. 400; Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916.

As was said in Rosseau v. Rouss, supra:

"As such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises, we have declared that they should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses."

The plaintiff's husband can hardly be said to have been a disinterested witness, and, if he were, his evidence falls far short of establishing a contract which entitled the plaintiff to recover for services rendered as a nurse. And in this connection it is worthy of notice that the plaintiff claims, and has been allowed, $4 a day for 117 days for nursing the decedent in his last illness. The record shows that he was not taken to the plaintiff's house until 10 days before his death, and there is not a scintilla of evidence that any greater services were rendered before that time than had been at any time previous.

The evidence as to the alleged loan is equally unsatisfactory. This depends, also, upon the husband's testimony, the slightest consideration of which shows it to be unreliable. He testified that the decedent

told him of the loans in August, 1904. The plaintiff's bill of particulars states that the loan was made in sums of $80, $50, and $80, on April 22, August 6, and October 8, 1904. Obviously the decedent could not have told him in August, 1904, of the loan which was made the following October; and yet the jury, upon his testimony alone, found that such loan was made.

But, if it be held that there was sufficient evidence to go to the jury on the question of the employment and rendition of the services, the evidence was entirely insufficient to sustain a verdict on the value of the services rendered. The witness Sophia Johner, a professional nurse, testified that she charged $3 a day of 12 hours, and that the services rendered by the plaintiff were worth from $2 to $2.50 a day. The plaintiff was not a professional nurse, nor did she render any services as a nurse, nor was she employed for 12 hours a day. As to the services which the plaintiff actually rendered, the witness admitted that she knew nothing of their value. Her evidence, therefore, to establish the value of the services, was incompetent and irrelevant, and should not have been admitted. Weidman v. Thompson, 53 App. Div. 22, 65 N. Y. Supp. 481.

The plaintiff was also allowed, against the objection of the defendant, to introduce evidence to the effect that the deceased was at one time a member of the Ancient Order of United Workmen, and that he had endeavored to make the plaintiff a beneficiary in the benefit certificate for $2,000 issued to him by that society. This evidence was clearly incompetent. The plaintiff's claim was based upon an alleged contract, and whether or not he had attempted to make her the beneficiary in the certificate tended neither to prove nor disprove the existence of such contract. His declarations were not part of the res gestæ; for they were alleged to have been made two or three years prior to the decease of the intestate, and nearly two years after the alleged employment. The deceased was unmarried. He had no children, and it may well be that, in view of the friendly relations existing between him and the plaintiff, he desired she should have the benefit of the certificate, to the exclusion of collateral relatives. Whatever may have been his purpose, it does not show or tend to show that it was to compensate the plaintiff for the services which she had rendered under the alleged contract, as testified to by her husband, and yet it was offered and received for this purpose. It was just the kind of evidence which might tend to prejudice a jury in favor of the plaintiff, and the court, in receiving it, erred.

For the same reason the court erred in receiving evidence, against defendant's objection, to the effect that the deceased had said he was going to provide for the plaintiff in his will. If the decedent had made a contract to pay for the services of the plaintiff, it is highly improbable that he would have contemplated payment by provision in his will; and, whether he did or not, that is not the contract sued upon.

Finally, inasmuch as there must be a new trial, it may not be out of place to call attention to the fact that the plaintiff was not entitled to costs. Such costs were awarded without any certificate or finding of the trial judge showing the facts upon which the award was found-

ed. The Code of Civil Procedure (section 1835) forbids the allowance of costs in an action brought against an executor or administrator in his representative capacity, except as prescribed in section 1836, which permits such an award where it appears that the claim was duly presented, that its payment was unreasonably resisted or rejected, or that there was a refusal to refer. Since these facts depend in whole or in part, at least, upon circumstances outside of the litigation, and not within its issues, the latter section provides that the facts must be certified by the judge or referee before whom the trial was had. The award of costs, therefore, must depend upon the certificate. Matson v. Abbey, 141 N. Y. 179, 36 N. E. 11.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.