---

(63 Misc. Rep. 627.)

## In re NELSON.

(Surrogate's Court, Greene County. June, 1909.)

1. **LIMITATION OF ACTIONS (§ 132\*)—COMPUTATION OF PERIOD—PRESENTATION OF CLAIM AGAINST ESTATE.**

    Presentation to an executrix of a claim against the estate and its allowance by her is a liquidation of the claim, and fixes a new date for the running of limitations as of the date of presentation.

    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 568; Dec. Dig. § 132.\*]

2. **EXECUTORS AND ADMINISTRATORS (§ 241\*)—CLAIMS—ALLOWANCE—EFFECT.**

    Presentation and allowance of a claim against a decedent's estate, in the absence of fraud or collusion, establishes its validity, and is in effect a judgment against the executrix.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 849; Dec. Dig. § 241.\*]

3. **EXECUTORS AND ADMINISTRATORS (§ 221\*)—CLAIMS—ESTABLISHMENT—EVIDENCE.**

    Evidence of the son of an executrix in favor of his mother's claim against the estate on an accommodation note, alleged to have been given by her to testator and afterwards paid by her, *held* not sufficiently clear

---

and definite to authorize its allowance as a claim against testator's estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½ ; Dec. Dig. § 221.*]

Judicial settlement of the accounts of Jeannette Nelson, as executrix of the estate of William B. Nelson, deceased, to which the Catskill Foundry & Machine Works and others filed objections. Sustained in part.

Roland S. Palmer, for executrix.
Osborn, Bloodgood & Wilbur, for the Catskill Foundry & Machine Works and others, creditors.
Jennings & Austin, for Deane & Deane and others, creditors.
Robert Wilkinson, for Helen D. Nelson and another, creditors.

TALLMADGE, S. William B. Nelson died September 3, 1906, leaving a last will and testament in and by which his widow, Jeannette Nelson, was nominated as sole executrix. On September 26, 1906, the will was admitted to probate by the surrogate of Greene county, and letters testamentary were issued to Jeannette Nelson. The executrix duly advertised for the presentation of claims, and claims were presented, as appears by the account of the executrix, aggregating $10,664.98. The testator left an estate not exceeding in value the sum of $2,200. On July 15, 1908, the executrix filed her account; and on the 12th day of December, 1908, she filed her petition praying for a judicial settlement of her account. All parties interested in the proceeding, including creditors, were cited to appear or duly waived the issuing and service of a citation upon them. The citation was returnable January 11, 1908. The proceeding was adjourned from time to time until March 3, 1909, at which time the creditors represented by Osborn, Bloodgood & Wilbur filed objections to the account of the executrix, and the creditors represented by Jennings & Austin joined in said objections.

Among the objections filed were the following:

"That the said executrix has not accounted for or charged herself with any interest on the moneys of said estate; and these contestants ask that said executrix be charged with interest from July 1, 1907, on all moneys of the estate in her hands on and after that date.

"That the allowance by said executrix of the claim for $3,106.10 in favor of Helen D. Nelson against the said estate was illegal and improper; and these contestants allege, on information and belief, that the said claim of Helen D. Nelson is not, nor is any part thereof, a valid or legal claim against the said estate, and they ask that said claim be wholly disallowed.

"That the allowance by said executrix of the claim of $204.50 in favor of Katharine J. Palmer against the said estate was illegal and improper; and these contestants allege, on information and belief, that the said claim of Katharine J. Palmer is not, nor is any part thereof, a valid or legal claim against the said estate, and they ask that said claim be wholly disallowed."

On the hearing the objection filed to the claim of Helen D. Nelson, which consisted of several items, was amended, and the following objection was added:

"That the note presented by Helen D. Nelson for $2,000, and allowed, is barred by the statute of limitations."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It appears by the testimony of Roland S. Palmer, the attorney for the executrix, that the claim of Helen D. Nelson was presented to him on the 16th day of February, 1907; that thereafter he, as attorney for the executrix, notified the claimant that the claim had been allowed. The claim, which was duly verified, was offered and received in evidence. The account of the executrix was also put in evidence. It also appears from the testimony that the verified claim of Katherine J. Palmer was received by said attorney for the executrix during the month of January, 1908, and that afterward he, as attorney for the executrix, notified the claimant of the acceptance of the claim. This claim was offered and received in evidence. The executrix then rested. No testimony was offered by the contestants.

These claims having been presented to and allowed by the executrix became liquidated and established claims against the estate represented by the executrix. Willcox v. Smith, 26 Barb. 316; McNulty v. Hurd, 72 N. Y. 520; Matter of Miles, 170 N. Y. 75, 62 N. Y. Supp. 1084; Matter of Miner, 39 Misc. Rep. 605, 80 N. Y. Supp. 643. If the contestants had the right to question the legality or justness of the claims upon judicial settlement, the burden of proof was upon them. Matter of Warrin, 56 App. Div. 414, 67 N. Y. Supp. 763. No testimony was offered by the contestants to show fraud or collusion in the allowance of such claims, or for any other purpose. The law stated in the Warrin Case has long been recognized and grows out of the principle that, when a claim has once been liquidated or established, it is not necessary for the claimant to establish such claim a second time, unless mistake, fraud, or bad faith is shown in the first liquidation of the claim.

The contestants, however, contend that the first item in the claim of Helen D. Nelson was barred by the statute of limitations. This claim became due and payable February 25, 1901. It was presented to the executrix on the 16th day of February, 1907, 5 years, 11 months, and 21 days after the claim became due. Clearly, upon the face of the claim, it was not barred by the statute of limitations at the time it was presented. The account was filed in the office of the surrogate on July 15, 1908, 7 years, 5 months, and 20 days after the claim became due. At the time the petition was filed for judicial settlement more than 7 years and 6 months had elapsed from the time said claim became due. And it is contended that, inasmuch as it does not clearly appear when such claim was allowed by the executrix, the burden is upon the executrix to show that said claim was allowed before it was barred by the statute of limitations. It was the duty of the executrix to carefully examine every claim presented, and not to allow a claim that was barred by the statute of limitations; and, inasmuch as the claim presented to the executrix was not disputed or rejected by her, I think it is fair to assume that the claim was not barred at the time of its acceptance, and that the burden is upon the contestants to show to the contrary. See Matter of Warrin, supra; Willcox v. Smith, 26 Barb. 316. I am also of the opinion that the rule laid down in Matter of Prince, 56 Misc. Rep. 222, 107 N. Y. Supp. 296, should be followed, that the claim, not having been disputed or rejected, and hav-

ing been accepted, must be deemed to have been allowed as of the time of the presentation or filing of the same.

The contestants further contend that a verbal acceptance by the executrix was not sufficient to stop the running of the statute, and cite Cotter v. Quinlan, 2 Dem. Sur. 30, in support of their position. I cannot agree with the reasoning of the surrogate in that case. The opinion seems to be in direct conflict with all of the later decisions. The executor does not maintain the relation of debtor. It is his duty to collect the assets of the estate, ascertain the creditors, legatees, and next of kin, and apply the assets in satisfaction of the claims in the order prescribed by law.

In Buckhout v. Hunt, 16 How. Prac. 409, Brown, J., says:

"The claims are to be presented not for immediate, but for ultimate, payment, if the assets prove sufficient, and, if insufficient, for a ratable proportion of whatever there may be."

There is no necessity for a promise in writing or a payment to prevent the running of the statute against a note after an action has been commenced or a judgment obtained. A new date is fixed thereafter from which to compute the running of the statute, and a claim once allowed by an executor becomes liquidated or established, in the method prescribed by statute, and is as effective to prevent the running of the statute against the original claim as a judgment.

In Schutz v. Morette, 146 N. Y. 137, 144, 40 N. E. 780, 782, Andrews, J., writing the opinion, says:

"The statutory system for the presentation and adjustment of claims against the estate of a decedent furnishes a summary and inexpensive method by which claims can be adjusted without action, or by reference. The executor or administrator may on being satisfied of the justice of a claim presented admit it, or, if he doubts its justness, may reject it, and leave the creditor to his remedy by action, if a reference is not agreed upon."

In Matter of Prince, 56 Misc. Rep. 222, 107 N. Y. Supp. 296, it is held:

"Executors and administrators are but trustees to settle the estate under their direction or control, agreeably to the principles of the statute. Nothing is gained by obtaining a judgment against them, beyond the liquidation of the debt. When a claim has been allowed it is established."

In McNulty v. Hurd, 72 N. Y. 520, the court say:

"It would be a contradiction in terms to say that an established claim can or should be litigated in an action or upon a proceeding for an accounting."

In Matter of Miles, 170 N. Y. 75, 62 N. E. 1084, the court say:

"There is evidence in the case, given by several creditors, that they were told by deceased executor, Barnard, that their claims were all right and would be paid when the real estate was sold. * * * An executor or administrator may with impunity admit and allow a claim, for the purpose of lulling a creditor into a sense of security, until his strict legal remedy is barred by the statute of limitations, and then by filing an answer in such a proceeding as this, send the creditor out of court without remedy or redress * * * to another forum, only to be met with a plea of the statute of limitations."

Creditors have several remedies for the adjustment of their claims against the estate of a deceased person. One, by action for the

IN RE NELSON.

recovery of judgment; one, by a reference under the statute; one, by having the matter heard before the surrogate by stipulation; and one, by the presentation of their claims to the legal representative and the allowance of the same by the latter. The recovery of a judgment against the legal representative would not entitle the debt to preference in payment over others of the same class. It would have the effect, however, of constituting it a liquidated debt against the estate. As already stated, the effect of such a judgment is merely to give the debt the character of a liquidated demand against the estate; and in this respect claims allowed by the legal representative attain the same character. And I am of the opinion that it was not the intention of the Legislature to give creditors who have liquidated their claims by judgment any advantage in the collection and enforcement thereof over other creditors of the same class, whose claims have been liquidated through the process of allowance by the legal representative. Matter of Miner, 39 Misc. Rep. 605, 80 N. Y. Supp. 643.

I am therefore of the opinion that the objections to the claim of Helen D. Nelson and to the claim of Katharine J. Palmer should be overruled, and that such claims should stand as allowed by the executrix, except that the first item of the claim of Helen D. Nelson should be allowed at $2,000, with interest thereon from February 25, 1901. The note upon which this claim is based is dated October 22, 1900, and payable on February 25, 1901. No agreement is contained in the note to pay interest. This note, therefore, would only bear interest from the time it became due. After reviewing the testimony, I am of the opinion that the executrix was reasonably diligent in settling the estate, and that there is no good reason why she should be charged with interest on the small balance remaining in her hands.

The only other question arising on the accounting for my consideration is whether the individual claim of Jeannette Nelson, concerning which proof was given, should be allowed. The claim is based upon a promissory note, dated July 3, 1898, in and by which the claimant promises to pay to the order of William B. Nelson the sum of $552.03 at the First National Bank of Amenia six months after date. This note was transferred by indorsement by William B. Nelson to the firm of Willson & Eaton; and on or about November 16, 1903, an action was commenced by Willson & Eaton against Mrs. Nelson, the maker of the note; and subsequently Mrs. Nelson paid to the plaintiffs the sum of $772.31. The presumption arises upon the face of the transaction that the claim was one in favor of William B. Nelson against the claimant; and the only evidence offered to do away with this presumption is that given by the son of the claimant, the attorney in this proceeding, as to admissions made by William B. Nelson in February, 1906, to the effect that a certain promissory note for $552, dated July 3, 1898, made by Jeannette Nelson to him, was delivered to him by Mrs. Nelson as an accommodation note; that she did not owe him that money; that, as she had been forced to pay, he was obligated to pay her that amount, and, as soon as he could realize some funds

from the estate of his father, he would reimburse her. On the cross-examination, the witness testified that he did not remember whether the date of the note or exact amount of the note was mentioned, but that they referred to the Willson & Eaton note. This question was then asked:

"And that is as far as you did refer to the note, by calling it the Willson-Eaton note? A. I don't remember exactly as to that."

Without detailing all the testimony on the cross-examination, I will refer particularly to the following testimony: The witness was asked to state on cross-examination just what conversation took place and what language was used in reference to this note upon which the executrix's claim was based, and the witness replied:

"I spoke to Mr. Nelson about a number, three or four, notes, which he was obligated upon and some of which my mother was obligated upon, and suggested to him that he clean those matters up as soon as he could from funds received from his father's estate, and we enumerated them in a rough way. We referred to the Barhyte matter—a note which my mother also paid, but which is outlawed now, and two or three others and also this Willson-Eaton amount and that is as near as I can recall in a rough way."

On further cross-examination, the witness stated that he could not positively swear that any mention was made of the exact amount due his mother on the Willson-Eaton note; that he could not positively swear of his own knowledge that the note referred to in the summons and complaint was the only note of the same character given by his mother to William B. Nelson as an accommodation note, or that the note covered by the summons and complaint was the only note upon which George T. Willson and Lewis F. Eaton had a claim against Jeannette Nelson and William B. Nelson, or either of them. He further says that he cannot swear positively whether in the conversation reference was made to the Willson-Eaton note, or the Willson-Eaton claim, or the suit. It further appears that a conversation was had between this witness and Mr. Bloodgood, in the presence of Mr. Austin, in which it is claimed that the witness Palmer stated to them at the time of the first hearing in this proceeding that he had no personal knowledge concerning the note in question, and that what he knew about it was hearsay.

From the testimony above referred to and all of the testimony given by the witness Palmer, it is impossible to determine what admission, if any, was made by William B. Nelson in reference to any existing indebtedness due from himself to the claimant in this proceeding. There is nothing in the testimony to show that the witness had any personal knowledge of the transaction between the claimant and her husband at the time of the giving of the note in question. There is no testimony to show that the witness was requested by his mother to speak to Mr. Nelson in reference to this claim, or that the claimant had ever demanded pay of Nelson, or claimed in any manner that Nelson was indebted to her by reason of the transaction referred to. Whether at the time this note was given she intended that her husband should have the use and benefit of it, and that he should repay the same to her, does not appear from the testimony. If such indebtedness ever existed from William B. Nelson to

his wife, the claimant, it may have been paid before the death of William B. Nelson. The testimony given by the son of the claimant is not sufficient, in my opinion, to show clearly an indebtedness existing in favor of the claimant against William B. Nelson. This is not a case where the court has a right to infer any fact in favor of the claimant. Such fact in order to establish the claim must be clearly proven by satisfactory testimony, otherwise the claimant is not entitled to recover. Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583; Matter of Marcellus, 165 N. Y. 70, 58 N. E. 796.

It is stated in Law v. Merrills, 6 Wend. 277:

"Evidence to establish a fact by the confessions of the party should always be scrutinized and received with caution, as it is the most dangerous evidence that can be admitted in a court of justice and the most liable to abuse. Although a witness is perfectly honest, it is impossible, in most cases, for him to give the exact words in which an admission was made. And sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed to the witness."

Admissions by a defendant, when they are the only positive evidence against him, are to be carefully scrutinized. Michigan Carbon Works v. Schad, 38 Hun, 71.

In Walbaum v. Heaney, 104 App. Div. 412, 93 N. Y. Supp. 640, it is held:

"It is the policy of the law to require that claims made against the estates of deceased persons be established by very satisfactory testimony. The rule that a fact testified to by a disinterested witness who is not discredited and whose testimony does not conflict with other evidence offered upon the trial is to be taken as legally established has no application to claims which are sought to be recovered against the estates of deceased persons. * * * Where claims are sought to be established against the estates of deceased persons, the courts are required to scrutinize the testimony with care, the attitude of the witness, and any interest which may have a tendency to influence his testimony." Scheu v. Blum, 119 App. Div. 825, 104 N. Y. Supp. 887; Forbes v. Chichester, 55 Hun, 611, 8 N. Y. Supp. 747; Rowland v. Howard, 75 Hun, 1, 26 N. Y. Supp. 1018; Farian v. Wiegel, 76 Hun, 462, 28 N. Y. Supp. 95.

As appears by the note upon which the claim is based, it was given July 3, 1898; and, if an indebtedness existed by reason of the giving of this note from William B. Nelson to the claimant or by reason of the fact that Mrs. Nelson paid the same when an action was commenced against her, it would seem that, at the time this action was commenced, she would have done something toward requiring a settlement of that amount by her husband. Claims thus withheld during the lifetime of the alleged debtor and presented after the party alleged to be liable is no longer capable of disputing the claim require the clearest kind of testimony in order to establish them. Matter of Salisbury, 41 Misc. Rep. 274, 84 N. Y. Supp. 215; Kearney v. McKeon, 85 N. Y. 136. The unsupported testimony of claimant's son as to the material facts is not such clear and satisfactory proof as to overcome the presumptions arising in this case. Matter of Jones, 28 Misc. Rep. 338, 59 N. Y. Supp. 893.

In Forbes v. Chichester, 55 Hun, 611, 8 N. Y. Supp. 747, Pratt, J., says:

"We reach this conclusion with regret, for, as has been well said, the character and standing of the plaintiff are such as to relieve him from any suspicion of presenting an unfounded claim. But public policy requires that demands against deceased parties must be strictly proved, and to relax that rule would give rise to evils far outweighing the inconveniences resulting from its strict enforcement, inconveniences which could be obviated by the exercise of ordinary care in procuring written or other evidence of contracts not dependent for validity upon the continuance of the life of either party. * * *

"It seems to be well settled that claims against the estates of deceased persons, in order to be upheld, must be clearly proved by competent evidence, and be free from any just or well-grounded suspicion of their validity." Winne v. Hills, 91 Hun, 89, 36 N. Y. Supp. 683.

In view of all the testimony given in reference to this claim and the law applicable to the claims presented by legal representatives of an estate, the testimony given by the son of the claimant is not such clear and satisfactory testimony as would warrant me in finding that it is a proper or just claim against the estate of the decedent.

I am therefore of the opinion that it should be disallowed. Findings and decree may be prepared accordingly. Costs to the attorneys to be adjusted at the time of settling the decree.

Decreed accordingly.