In the Matter of the Estate of WILLIAM C. LUIPPOLD, Deceased.

Surrogate's Court, Erie County, January 4, 1933.

*Bartholomew & Bartholomew* [*Morey C. Bartholomew* of counsel], for the executrix.

*Templeton, Turnbull & Templeton* [*Foster B. Turnbull* of counsel], for the contestant Edward J. Luippold.

HART, S. The will of William C. Luippold, duly probated in this court, provided, among other things:

" *Second.* I do hereby give, devise and bequeath unto my Executor hereinafter named in trust, the sum of Ten Thousand Dollars to invest and reinvest the same, and pay over the net income thereof to my wife Anna E. Luippold for the term of her natural life. On the death of my wife above named I direct the trust to terminate and end and the corpus of said trust estate be distributed and paid over to my brother Edward J. Luippold to whom I give, devise and bequeath the same.

" *Third.* All the rest, residue and remainder of my property, of whatever name or nature and wherever situate I do hereby give, devise and bequeath to my beloved wife, Anna E. Luippold absolutely and forever, hereby appointing her the executrix of this my last Will and Testament and hereby revoking all former wills by me made."

It now develops that the estate is not of sufficient size to provide for the trust of $10,000, hereinbefore mentioned. Edward Luippold, the decedent brother, who will receive a benefit from this bequest in the event he survives his sister-in-law, the wife of decedent, is objecting to the following items of the account on file in this court:

(1) To the allowance of $600 for a fur coat ordered by the decedent as a gift for his wife before his death.

(2) To the cost of the funeral provided for his brother, which was $1,290.

(3) To the cost of the monument placed on his brother's grave, which was $925.

(4) To the loan of $500; and

(5) Further claims that there should be included one-half of certain mortgages aggregating $5,000 in his brother's estate.

During the latter part of February, 1931, Mr. Luippold came

into the store of one Joseph Cantor and stated that he wished him to make a fur coat for his wife, Anna E. Luippold, and that he desired it to be a surprise gift to her. About three months after the death of her husband, Mrs. Luippold came to Mr. Cantor's store for the purpose of storing a fur coat which she owned, and at that time was told about the gift.

There is no evidence that during the three months' period subsequent to the death of Mr. Luippold Mr. Cantor ever talked with Mrs. Luippold, either individually or as executrix, about this fur coat. On direct examination Mr. Cantor stated in substance that the coat was in the course of construction at the time Mrs. Luippold came to his store. Upon cross-examination, he stated as follows: " Q. You measured her on that occasion for the coat? A. I did. Q. But to that time you did no work on this coat? A. No."

The executrix, who has an individual interest in this transaction, has seen fit not to reject the claim, but to allow it as a legitimate one against the estate. In view of this situation this court feels justified in considering, and as bearing upon the weight of the evidence, that if Mr. Cantor were to make this claim against the estate, his testimony, under proper objection, would be barred under section 347 of the Civil Practice Act, and his claim in all probability would fail. Declarations of a deceased person, though admissible, constitute the weakest kind of evidence, and in the light of all the circumstances this is particularly true in the case before us.

The courts uniformly scrutinize claims of this character with great care, and permit a recovery only where a claim is established by very satisfactory evidence. The rule thus adopted is made necessary by reason of the fact that one of the parties to the contract, upon which the establishment of the claim depends, is dead. (*Shakespeare* v. *Markham*, 72 N. Y. 400; *Van Slooten* v. *Wheeler*, 140 id. 624; *Rosseau* v. *Rouss*, 180 id. 116; *Apollonio* v. *Langley*, 106 App. Div. 40; *Schou* v. *Blum*, 104 N. Y. Supp. 887.)

I do not believe that under all the circumstances and upon the evidence presented here, this court would be justified in allowing the item of $600, the cost of the fur coat of Mrs. Luippold, against the estate of the deceased. The account, therefore, should be surcharged.

The loan of $500 from Mrs. Luippold to the deceased is hereby allowed.

In view of the value of the estate, the cost of the funeral is allowed at $1,000, and the cost of the monument at $725, and the account of the executrix should, therefore, be surcharged in the sum of $490.

This brings us to the question of the two mortgages; one given by Charles E. Roth and Irene Roth, his wife, to William C. Luippold and Anna E. Luippold, his wife, dated October 1, 1929, for $3,500, recorded October 2, 1929, in liber 599 of Mortgages at page 2107; the other given by Erwin Schlagenhauf and Margery E. Schlagenhauf to William C. Luippold and Anna E. Luippold for $1,500, dated January 1, 1931, and recorded February 25, 1931, in liber 2372 of Mortgages at page 372.

Both of these mortgages were omitted from the account, and it is claimed by the contestant that one-half of each, namely, $1,750 in one case and $750 in the other, should belong to this estate.

The executrix on the other hand contends that these mortgages belong to her by right of survivorship.

The contestant relies principally upon *Matter of Blumenthal* (236 N. Y. 448). The facts of that case are as follows: " Alfred Blumenthal and Hannah Blumenthal, his wife, were the owners as tenants by the entirety of the premises known as Nos. 503–505 West One Hundred and Eleventh street in the borough of Manhattan, city of New York. They sold the premises, taking back from the purchaser a bond and mortgage executed to Alfred Blumental and Hannah Blumenthal, his wife. Thereafter and while the said Alfred Blumenthal and his wife were still the owners and holders of said bond and mortgage, Alfred Blumental died on or about the 12th day of June, 1921, and Hannah, his wife, died shortly thereafter on or about the 24th day of June, 1921. It is said that both died as the result of injuries sustained in a railroad accident in Spain."

The question at issue in that case seemed to be whether the bond and mortgage were to be treated as a substitute for the real estate as being held by the parties like an estate by the entirety or in joint tenancy, or whether the bond and mortgage were to be treated like any other bond and mortgage, and amounted to an ownership in common where each owned one-half of the amount of the security.

The court distinguished between two cases, namely, *Matter of Baum* (121 App. Div. 496) and *West* v. *McCullough* (123 id. 846; affd., 194 N. Y. 518).

In the *Baum* case the husband and wife, being tenants by the entirety, conveyed land and took back a purchase-money mortgage payable to both. There it was decided that the survivor was not entitled to the whole.

The *McCullough* case involved the changing of a savings bank account from the husband himself to himself and his wife.

The court said (at p. 451): " The two cases were dissimilar in

principle. The *Baum* case was an estate by the entirety, later changed into a mortgage in the names of husband and wife. It did not appear who had purchased the property or that the husband had ever been the *sole* owner of it at any time. The very opening sentence of the *McCullough* case shows the difference:

" ' When George W. McCullough changed the savings bank account to the names of himself and wife he had controlling authority for believing that the act evidenced an intention on his part to benefit his wife to the extent of a right of survivorship in said fund, and that nothing remained to be done to effectuate that intention.' (p. 847.)

" Here is the point of difference and the point of the case.

' The intention of the husband is the thing to be looked for. When he takes the title out of his own name and shares it with his wife, it has been said that this evidences an intention that she shall take by survivorship. (See cases cited in *Kennedy Case*, [*Matter of Kennedy*, 186 App. Div. 188].) The presumption does not apply to one not a wife. (*Matter of Bolin*, 136 N. Y. 177.) But how can we discover any such intention when we do not know who owned or paid for the property in the first place? Such an instance was touched upon correctly by the late Mr. Justice BURR in *Matter of Kaupper* (141 App. Div. 54, 57).

" ' In the absence of direct evidence as to the intent, the law deals with presumptions. It has been held that if the husband and wife each contribute to a joint investment, or to the purchase of a security, and the title is taken in their joint names to be held by them, their executors, administrators or assigns, no presumption arises from the nature of the act that either intended to make a gift of his or her share to the survivor, and they would hold the same as tenants in common.

" ' On the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint name of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence the presumption will be that he intended to confer upon his wife the right of survivorship. * * * Where it does not appear to whom the money belonged when it was placed in the bank, or who placed it there, although the bank book may be in the joint name of husband and wife, in the absence of other evidence of intent the presumption will obtain that each had an equal interest therein. (*Wetherow* v. *Lord*, 41 App. Div. 413.) ' "

Later on in the opinion (at p. 454) the court said: " *This is all we have. There is nothing else to indicate the intention of the parties except these words. Under these circumstances the bond and mortgage*

*were held in common and the husband and wife had an equal share or ownership therein."*

What proof was lacking in the *Blumenthal* case is not absent in this case. The evidence shows that the funds from which the mortgage money was drawn came from the bank account of Anna E. Luippold. There is no proof as to any other source. We need go no further. The testimony also shows the intention of the parties. A thorough study of the *Blumenthal* case convinces me that the present case falls within the rule laid down in *Matter of Kaupper* (141 App. Div. 54, 57) and *West* v. *McCullough* (123 id. 846; affd., 194 N. Y. 518).

The mortgages, therefore, belong to Anna E. Luippold, survivor and widow of the deceased.

Let a decree enter accordingly.